594 A.2d 724

**Tamela (Fontine) LEE**

v.

**Joseph FONTINE, Appellant.**

Superior Court of Pennsylvania.

Submitted June 24, 1991.

Filed July 30, 1991.

Thomas E. Scott, Greentown, for appellant.

Eric M. Levande, Tunkhannock, for appellee.

Before OLSZEWSKI, TAMILIA and FORD ELLIOTT, JJ.

TAMILIA, Judge:

This is an appeal from the custody modification Order of February 19, 1991, authorizing appellee/mother to establish residence for herself and the parties' minor children in the state of Washington. The Order further provided appellant/father shall have partial physical custody of the minor children for the purpose of visitation each summer, commencing one week following the close of school and ending one week prior to the reopening of school, with the costs of transporting the children for the purpose of visitation to be divided equally between the parties.

Appellant now argues the trial court erred in its interpretation and application of the appropriate standard for cases where the primary custodial parent seeks to relocate outside the Commonwealth. We find this argument without merit for several reasons.

It has been held in Pennsylvania that custody and visitation matters are to be decided on the basis of the judicially determined "best interests of the child" standard, on a case by case basis, considering all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being. *Zummo v. Zummo*, 394 Pa.Super. 30, 574 A.2d 1130 (1990).

> On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the factfinding function of the trial court in order to substantiate our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. *See Karis v. Karis*, 518 Pa. 601, 608, 544 A.2d 1328, 1332 (1988); *Lombardo v. Lombardo*, 515 Pa. 139, 147–48, 527 A.2d 525, 529 (1987); *Commonwealth ex*

*rel. Robinson v. Robinson,* 505 Pa. 226, 236–37, 478 A.2d 800, 805–06 (1984).

*Id.,* 394 Pa.Superior Ct. at 54, 574 A.2d at 1142.

Appellant contends a recent decision by a panel of this Court in *Gruber v. Gruber,* 400 Pa.Super. 174, 583 A.2d 434 (1990), has altered the "best interests" standard to a more specific three-prong test in resolving custody relocation disputes. *Gruber* set forth the following factors to be *considered* by the trial court in deciding whether a custodial parent and children shall be permitted to relocate at a geographical distance from a noncustodial parent:

1. The potential advantages of the proposed move, economic or otherwise, and the likelihood the move would improve substantially the quality of life for the custodial parent and the children and is not the result of a monetary whim on the part of the custodial parent;

2. The integrity of the motives of both the custodial and noncustodial parent in either seeking the move or seeking to prevent it; and

3. The availability of realistic, substitute visitation arrangements which will foster adequately an ongoing relationship between the child and the noncustodial parent.

*Id.,* 400 Pa.Superior Ct. at 184–85, 583 A.2d at 439. The *Gruber* Court took pains to assert that "achieving 'the best interests of the child' remains the ultimate objective in resolving all child custody and related matters," but only emphasized "that the best interests of the child are more closely allied with the interests and quality of the custodial parent and cannot, therefore, be determined without reference to those interests." *Id.,* 400 Pa.Superior Ct. at 183, 583 A.2d at 437–38 (footnote omitted).

While we acknowledge the refinements posited in *Gruber* in relocation cases, they do not create a new standard and we hasten to stress the polestar of our analysis in this case, just as it was in *Gruber* and a legion of prior custody cases,

remains the best interests of the child, and on that basis we examine the findings of the trial court.[1]

Two specific sections of the custody law as contained in 23 Pa.C.S. § 5301 *et seq.*, govern the court's decision in this and similar cases.

### § 5301. Declaration of policy

The General Assembly declares that it is the public policy of this Commonwealth, when in the best interest of the child, to assure a reasonable and continuing contact of the child with both parents after a separation or dissolution of the marriage and the sharing of the rights and responsibilities of child rearing by both parents and continuing contact of the child or children with grandparents when a parent is deceased, divorced or separated.

This section must be considered and the court must be satisfied the moving party is not undertaking the move to defeat the declared legislative intent. In removing the child from the normal relational contact with one of the parents and/or grandparents, the sole consideration stated by the legislature is the best interest of the child. Any judicially determined preconditions may amplify, but do not alter, the best interest standard.

Secondly, to assure that a review will be undertaken when a move is contemplated, the statute provides as follows:

### § 5308. Removal of party or child from jurisdiction

If either party intends to or does remove himself or the child from this Commonwealth after a custody order has been made, the court, on its own motion or upon motion of either party, may review the existing custody order.

With these considerations in mind we are prepared to review the actions and disposition of the trial court.

---

**1.** We note that although appellant disputes the refinements made by this Court's decision in *Gruber v. Gruber,* 400 Pa.Super. 174, 583 A.2d 434 (1990), he offers no support for his allegation that the "best interest" standard has been changed, and eventually concedes the children's best interests are "still an applicable consideration *after* the emergence of the three-prong *Gruber* test...." (Brief of Appellant, p. 16.)

From our thorough examination of the record and the trial court's able Opinion, reflecting its own analysis of the record and specifying the reasons for its decision, we find no gross abuse of the court's discretion requiring reversal of its decision. *Ashford v. Ashford,* 395 Pa.Super. 125, 576 A.2d 1076 (1990). As the trial court stated:

1. The advantages of the move to Washington far outweigh the disadvantages. Both [appellee and her husband] are currently receiving public assistance. In Washington, both will have good jobs. Here, they reside in a public housing project. In Washington, they will have their own home. The quality of the children's lives will be greatly improved by the move to Washington. The disadvantage, of course, is the reduced contact with their father and other relatives in Pennsylvania. This, however, can be remedied by the extensive summer visitations provided by this court's order.

2. The motives of Mrs. Lee are without question. The move to Washington has been well thought out and planned for two years. Mr. Fontine's motivation, however, is less clear. Often, Mr. Fontine will not take the youngest child, Matthew, for visitation. Matthew has cerebral palsy and organic brain disorder. He cannot communicate and requires constant attention. Obviously, Matthew is difficult to handle (N.T. 20). His father has expressed little or no interest in his educational development (N.T. 74–75). Yet, now he says he wants full physical custody of Matthew and the three other children. The court did not view Mr. Fontine's testimony as either realistic or honest, and was constrained to conclude that he opposes the move to Washington, not from consideration of the best interests of the children, but from self-interest, or to frustrate his ex-wife's efforts at self-improvement.

3. Realistic, substitute visitation arrangements are available for the three older children. Matthew's transportation from Washington to Pennsylvania will be difficult unless accompanied by a parent or other adult, due to

his disability. But, the extended summer visitation will ensure a continuing, meaningful relationship between the noncustodial parent and the children, and will maintain a relationship with other family members. Mr. Fontine's [sic] opposes the summer visitation because summer will be his "busy" season, if and when he should obtain employment (N.T. 63). This further serves to underscore the court's conclusion that his request for primary physical custody of all four children, (one of whom is severely handicapped) is specious. And yet, he will be too busy for them in the summer?

(Slip Op., Vanston, P.J., 3/22/91, pp. 3–4.)

Appellant argues that because of the limited financial resources of the parties, the trial court's visitation schedule does not "adequately foster an ongoing relationship" between the children and appellant, the noncustodial parent. Appellant argues the great distance involved between Pennsylvania and Washington will make summer travel for the children cost-prohibitive, particularly in light of the special needs of a severely handicapped child. While we empathize with the exigencies of the situation facing the parties in the future, and the resulting need for compromise and flexibility, we cannot alter the physical distance between Pennsylvania and Washington, nor can we say the trial court's resolution of this issue was not realistic. The custodial parent and the children will be in an improved environment which is most certainly in the children's best interest.

For the foregoing reasons, we concur with the trial court's findings, allowing appellee to relocate with her children to Washington.

Order affirmed.