**Schake v. Boyer**

C.P. of Allegheny County, no. FD 98-04528-001.

*Craig Alexander,* for plaintiff.
*Luke Kelly,* for defendant.

LUCCHINO, *J.,* June 29, 2001—This is an appeal from the court's November 22, 2000 order that denied

the request of defendant/appellant Lynn Schake (Mother) for leave to relocate outside Pennsylvania with the parties' minor daughter.

## BACKGROUND

The parties are the parents of a minor child, Jenna L. Boyer, who was born on June 20, 1995. Mother and plaintiff/appellee Timothy Boyer (Father) have never been married. The parties lived together from Jenna's birth until February 1998. On December 10, 1998, a consent order of court was entered that gave the parties joint legal custody of Jenna and gave Mother primary physical custody. Father had partial custody every other weekend and for several hours a day on Tuesdays and Thursdays. The parties also split holiday and vacation time. Two subsequent orders relating to custody did not significantly alter that schedule.

After another member of this court granted, on an interim basis, Father's petition to prevent relocation, Mother filed a petition for relocation with minor child. After a conciliation in this matter, the court ordered psychological evaluations and that Father (the party who sought the evaluations) bear the entire cost thereof. Subsequently, Mother filed a complaint for custody and relocation. That complaint sought the court's confirmation of Mother's primary physical custody of Jenna and leave to relocate to Virginia with her. After the psychological evaluations were completed, a full-day hearing was held on October 19, 2000.

Both Mother and Father were raised, met and began rearing Jenna together in the Pittsburgh area. Mother and

Father both have friends and relatives living in this region and none in Virginia (except for Jeffrey Suriano, Mother's then-fiancé). After the parties separated, Mother and Jenna began living with Mr. Suriano in Pittsburgh, until Mr. Suriano took a job as a district manager for Rite Aid Pharmacy Co. in Virginia Beach, VA. Mother's intention was that she and Jenna would join Mr. Suriano in Virginia. Mother testified that, if she were allowed to relocate to Virginia with Jenna, she and Mr. Suriano would be married. However, if relocation were not permitted, the parties might not get married.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

Mother raises, in her statement of matters complained of on appeal, the following issues:

(1) The trial court abused its discretion and/or committed an error of law in failing to hold a prompt *"Plowman" [infra]* hearing following the filing of the relocation petition as required by law.

(2) Instead, the trial court treated the case as a custody modification case as opposed to a relocation case complete with discovery and psychological examinations which further delayed the trial.

(3) The trial court abused its discretion and/or committed an error of law by misapplying *Gruber* principles in general and in the following particulars:

(a) In its determination that Mother failed to adequately address and demonstrate a partial custody plan that did not infringe upon Father's current partial custody rights when the same is not a *Gruber* principle.

(b) In failing to give weight to the court appointed psychologist's recommendation for custody (admitted into evidence without objection) which was in fact more restrictive than Mother's plan.

(c) In its determination that Father's relationship with the child would not be properly fostered if the move were to occur despite the recommendation of the expert to the contrary.

(d) In its determination that Mother failed to demonstrate that she was moving for other than economic reasons.

(e) In its determination that Mother presented no credible testimony that the move would substantially improve the minor's quality of life.

(f) In failing to consider all testimony in its determination that the minor's quality of life would be improved.

(g) In failing to give weight to the benefits of a two person male/female household which the child had previously enjoyed for a period of years.

(h) In failing to give weight to the fact the Mother and her fiancé intended to be married upon the happening of the relocation.

(4) The trial court abused its discretion and/or committed an error of law by failing to take into consideration Father's continuous failure to pay child support in a timely fashion prior to the filing of the relocation petition.

(5) The trial court abused its discretion and/or committed an error of law by failing to take into consideration Father's continuous willful disregard for the terms

of the current order when making its determination to deny the relocation petition.

## LEGAL STANDARD

In all custody matters, the ultimate issue is the best interests of the children. See *e.g., Lee v. Fontine,* 406 Pa. Super. 487, 489, 594 A.2d 724, 726 (1991). In a relocation case, this best-interests analysis is made through the prism of the *Gruber* factors:

"(1) The potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the child and is not the result of a momentary whim on the part of the custodial parent;

"(2) The integrity of the motive of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; and

"(3) The availability of realistic, substitute visitation arrangements that will adequately foster an ongoing relationship between the child and the non-custodial parent." *Gruber v. Gruber,* 400 Pa. Super. 174, 184-85, 583 A.2d 434, 439 (1990). Any judicially determined preconditions amplify, but do not alter, the best interest standard. See *Lee,* 406 Pa. Super. at 489, 594 A.2d at 726.

## DISCUSSION

Relocation was denied in this case for two main reasons: (1) Mother's failure to show that the proposed move would substantially improve the quality of life for Mother and Jenna and (2) the unavailability of adequate substitute visitation arrangements.

### *Quality of Life Improvement*

Mother failed to sufficiently establish that her quality of life, and that of Jenna's, would be improved by the move. Mother and Mr. Suriano testified in only the most general terms about the quality of schools and neighborhoods in Virginia. Instead, Mother relied heavily on the benefit of her being reunited with Mr. Suriano. While it is true Mother said she intended to marry Mr. Suriano if permitted to relocate, the court put slightly less weight on this fact than it otherwise would have because of Mother's history of twice having been engaged without getting married.

One of the chief benefits Mother contended supported relocation was economic. Because of Mr. Suriano's income, she would not be required to work if she lived in Virginia. However, Mother was not working while living in Pennsylvania. She testified that Mr. Suriano paid all her bills. She also testified that she could not work because she could not find daycare for Jenna. If she moved to Virginia, she intended to attend school and possibly also seek employment. Mother did not adequately explain, however, why she would be better able to engage in those activities in Virginia than in Pennsylvania (other than the implication that Mr. Suriano would be supporting her in Virginia but not in Pennsylvania). While there would be some benefit to Mother to relocate in that she could be with her fiancé, there was no credible testimony that this would improve Jenna's life in any significant way.

The most tangible benefit of such a move would be Mr. Suriano's higher income in Virginia compared to

Pittsburgh, but Mr. Suriano already has moved to Virginia and appeared to have no intention of returning to Pittsburgh if relocation were denied.[1] Thus, in one sense, Mother and Jenna already were getting the benefit of Mr. Suriano's increased income. In any event, an economic benefit is insufficient in itself to satisfy the first *Gruber* factor. See *Maurer v. Maurer,* 758 A.2d 711, 714 (Pa. Super. 2000). As the *Maurer* court stated, there needs to be a showing of other benefits of relocation such as a "return to a network of family or friends, . . . educational opportunities, or . . . an improved physical environment." *Id.* Mother made no such showing and, in fact, Mother's network of family and friends is in Pennsylvania, not Virginia. For these reasons, the court found that the first *Gruber* factor was not satisfied.

### Substitute Visitation Arrangements

Under Mother's proposal, if relocation had been permitted, Jenna would have spent one weekend a month during the school year with Father, as well as extended vacation and holiday time. This arrangement was unacceptable because it would have subjected a 5-year-old child to a 16-hour round-trip car trip once a month. (Hav-

---

1. Mother and Mr. Suriano, whether intentionally or not, made it seem as though the court, on some level, would be to blame if relocation was denied and, subsequently, Mother did not marry Mr. Suriano. As unfortunate as that circumstance might be, the court rejects the notion that its decision should be swayed significantly by that possibility. The court's task is to determine, within the framework of *Gruber* what is in Jenna's best interests; its task is not to preserve or enhance the romantic life of Mother at the possible expense of Jenna's best interests.

ing the child fly to Pittsburgh was not a suitable option because of her age.) Mother's suggestion that Father travel to Virginia (or to Mother's sister's home in Maryland) once a month to visit the child also was unworkable. For Father to visit with a 5-year-old in a town eight hours from his home is not conducive to fostering an ongoing relationship between Father and Jenna, because there was no showing of an adequate place for Father to exercise his custodial time. Father's regularly spending a weekend in a hotel with a 5-year-old is not appropriate for a child her age, and the alternative, that Jenna visit with Father during the day while staying at Mother's home at night, largely defeats the purpose of Father's visit. Meanwhile, if Father elects to pick up Jenna in Maryland, she will not be relieved of the burden of excessive car travel between Virginia and Pittsburgh. Moreover, the court found that giving Father extended periods of custody of a 5-year-old child only during holidays and the summer would be insufficient to properly foster his relationship with Jenna.

The court considered the testimony of Dr. William Fischer, including his recommendation that relocation be permitted. An expert's opinion, however, does not trump the *Gruber* factors, which the court found were not satisfied. And even Dr. Fischer expressed a concern about Mother's willingness to support Jenna's relationship with Father because of her withholding Jenna from Father on several occasions when he was entitled to the child. Given the difficulty of Father's maintaining a meaningful relationship with Jenna from a distance, the real possibility that Mother would not adequately support that relationship was another factor that militated against allowing relocation.

*Other Issues*

Mother complains of the court's failure to hold a prompt *Plowman* hearing and its permitting discovery and an expert evaluation. The mandate of *Plowman,* however, is that a hearing must be held either before relocation or, under exigent circumstances, within a reasonable time thereafter. See *Plowman v. Plowman,* 409 Pa. Super. 143, 153, 597 A.2d 701, 706 (1991). In this case, no relocation was permitted and a hearing was held before the court ruled. Thus, the *Plowman* hearing requirement was not violated.

Additionally, Mother filed a complaint for custody and relocation in which she asked the court to confirm her primary custody of the child, thereby injecting the issues relating to primary custody directly into this matter. The court, in responding to a difficult situation, and upon the request of Father, allowed discovery and ordered an expert evaluation. In custody cases, especially, the court is charged with creating a complete record. See *e.g., Schwarcz v. Schwarcz,* 378 Pa. Super. 170, 198, 548 A.2d 556, 570 (1988), *appeal denied,* 522 Pa. 578, 559 A.2d 39 (1989), *cert. denied,* 498 U.S. 815 (1990). Thus, Mother's complaint in this regard is misguided in that, within reason, it hardly can be error for a trial court in a custody case to create as full a record as possible and give the parties every reasonable opportunity, consistent with the rules and the law, to develop potential evidence.

Mother also complains about the court's denial of the relocation petition given Father's failure to make support payments in the summer and fall of 2000. However, before that time, Father had a history of making regular

support payments. From December 1999 and through the summer of 2000, Father was off work because of a disability that led to neck surgery in April 2000. After Father's disability payments ran out in June 2000, Father applied for and began receiving cash assistance. It was starting in June 2000 that Father began to fall significantly in arrears on his support order. Given these facts, the court, while not condoning Father's failure to pay support regularly, put less weight than it otherwise might have on Father's support arrears and did not infer therefrom that Father was not committed to the well-being of his daughter.

## CONCLUSION

Mother puts great reliance on her contention that Jenna would benefit from growing up in a two-parent family (herself and Mr. Suriano), which benefit would be denied to her if Mother and Jenna were not permitted to relocate. However, this court put greater weight on the fact that Jenna likely would be unable to have a meaningful relationship with Father (who cares about Jenna very much) if Jenna moved to Virginia Beach. Given that Mother and Mr. Suriano met and lived together in Pittsburgh and Mother and Jenna have no ties to Virginia Beach other than Mr. Suriano, it was not in Jenna's best interests for her to be relocated so far from Father, her extended family and the only home she has known.

For the foregoing reasons, the court's November 22, 2000 order should be affirmed.