**Gauri TRIPATHI, Appellee,**

v.

**Satish TRIPATHI, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 3, 2001.
Filed Nov. 15, 2001.

Timothy J. Gricks, Pittsburgh, for appellant.

Thomas M. Mulroy, Pittsburgh, for appellee.

BEFORE DEL SOLE, P.J., LALLY–GREEN and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 Satish Tripathi (father) appeals the February 8, 2001 Order awarding him and Gauri Tripathi (mother) shared legal custody of the parties' eight-year-old daughter,

Pooja, primary physical custody to mother and partial physical custody to father.

¶ 2 The parties married in 1986 and separated in 1999. On December 22, 1999, father filed a complaint for custody. As father resides in California, an award of custody in his favor would have required relocation of Pooja from Pennsylvania to California.

¶ 3 The evidence presented at the custody hearing established that both parents are appropriately focused on the wellbeing of Pooja. Mother has been Pooja's primary caretaker for the majority of the child's life and Pooja has never been separated from mother for any extended period of time. Mother is a hematologist/oncologist and has been employed by UPMC at Uniontown Hospital in Fayette County, Pennsylvania for the past six years. Mother has a single-family residence in which she, Pooja and the child's maternal grandmother reside. The evidence shows Pooja has a good relationship with her grandmother, who provides childcare when mother is working and Pooja is not in school.

¶ 4 Father currently resides in Pasadena, California and is director of regulatory affairs for Baxter Healthcare Corporation, where he has worked for over a year. Even prior to the parties' separation, father spent most of his time working out of town, coming home only on weekends. Father also has a single-family residence; however, father does not have a family support network in Pasadena and must rely on daycare when he is unable to care for Pooja.

¶ 5 The record establishes that Pooja has lived in the Uniontown area since the age of two and has had the benefit of a solid support network there. She has developed well academically, artistically and socially. At the time of the hearing, Pooja was in third grade at the Verna Montesso-

ri School in Uniontown, where she is considered to be an exceptional student. In addition, Pooja plays the violin and takes ballet lessons.

¶ 6 Following a hearing, the court determined that it was in the best interests of the child to remain in the primary physical custody of mother and to maintain regular visitation with father. This appeal followed.

¶ 7 Father raises six issues on appeal.

1. Did the trial court incorrectly place the burden on Father to establish an independent and direct benefit to [the child] contrary to *Gruber vs. Gruber* [400 Pa.Super. 174, 583 A.2d 434 (1990)]?

2. Did the trial court err and abuse its discretion in denying Father's request for primary custody of [the child] and his request for relocation?

3. Did the trial court err and abuse its discretion in failing to find that Father clearly and unequivocally fulfilled the first prong of *Gruber v. Gruber?*

4. Did the Trial Court err and abuse its discretion in failing to find that Mother's motives in objecting to relocation were suspect?

5. Did the Trial Court err and/or abuse its discretion in failing to provide alternative arrangements which would maintain the ongoing Father/child relationship?

6. Did the Trial Court err and/or abuse its discretion in considering all of the Gruber factors in determining the best interests of the minor child?

(Appellant's brief at 5.)

■ ¶ 8 This Court's review is the broadest in child custody cases; however, we will not reverse the decision of the trial court absent an abuse of discretion. *Clap-*

*per v. Harvey,* 716 A.2d 1271 (Pa.Super.1998).

'[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings . . .'

*Id.* at 1273, *quoting McMillen v. McMillen,* 529 Pa. 198, 202, 602 A.2d 845, 847 (1992). Moreover, our paramount concern is that the disposition of the matter reflects what is in the best interests of the child. *Bupp v. Bupp,* 718 A.2d 1278 (Pa.Super.1998).

¶ 9 Father argues the court erred in concluding that he had not satisfied the test for relocation as set forth in *Gruber v. Gruber,* 400 Pa.Super. 174, 583 A.2d 434 (1990), and that the evidence demonstrated that relocation of Pooja to California is not in her best interests.

¶ 10 The fundamental issue in all custody cases is the best interest of the children. *Richards v. Hepfer,* 764 A.2d 623 (Pa.Super.2000). "In all instances *where a custodial parent seeks to relocate* and the non-custodial parent opposes the move, the burden is on the custodial parent to establish a significant improvement in the quality of life for that parent and child." *Maurer v. Maurer,* 758 A.2d 711, 714 (Pa.Super.2000) (emphasis added). "In *Gruber,* our Court set forth certain factors for a trial court to consider when a custody dispute arises from one parent's

intent to relocate out of the jurisdiction of the court." *Hurley v. Hurley,* 754 A.2d 1283, 1284 (Pa.Super.2000). Those factors are:

(1) The potential advantage of the proposed move, economic or otherwise, and the likelihood the move would improve substantially the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;

(2) The integrity of the motive of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; and

(3) The availability of realistic, substitute arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Richards v. Hepfer, supra* at 626 (internal quotations and citations omitted.)

¶ 11 Unlike most relocation cases, father is not and never has been the custodial parent. His arguments that the schools and community in Pasadena would provide Pooja with a wealth of experience appear to be valid; however, father misses the point that Pooja is already happy, healthy and well adjusted in her home in Uniontown with her mother.

¶ 12 There is no evidence Pooja is not being culturally, intellectually and emotionally stimulated while residing with mother. To the contrary, the evidence shows she excels at school and the arts and that she has "developed strong ties to the community with her friends, school and extracurricular activities." (Trial Court Opinion, Solomon, J., 4/15/01, at 10.) Further, mother has and continues to be the parent best able to spend time with Pooja.

'[W]here both parents are determined to be equally fit, the fact that a stable, long-continued and happy relationship has developed between the child and one

parent may be of critical importance to the formulation of a custody decree.' *Beers v. Beers,* 710 A.2d 1206, 1212 (Pa.Super.1998), *appeal denied,* 556 Pa. 701, 729 A.2d 1124 (1998), *quoting Stolarick v. Novak,* 401 Pa.Super. 171, 584 A.2d 1034, 1037 (1991.)

¶ 13 Upon review of the record, we find the trial court properly considered *Gruber* and its underlying principles while recognizing the controlling dynamic was that it was in the best interests of Pooja to remain with her mother. We find no merit to father's argument that the trial court improperly placed a burden on him to prove an "independent and direct benefit" to Pooja. Further, there is no evidence either party acted in bad faith with respect to their positions in the matter of custody and relocation. The court found mother not only encourages Pooja to have frequent contact with father but also has been "very cooperative in allowing Father liberal visitation since the separation and Father's relocation to California." (Trial Court Opinion, at 6.)

¶ 14 This case is intriguing for two reasons. The first is the fact that there is only one Superior Court case concerning relocation by and transfer of custody to a non-custodial parent. *Clapper v. Harvey, supra.* There, this Court properly noted that the *Gruber* analysis should be considered as part of the overall best interest of the child analysis. Secondly, father, as the non-custodial parent, makes his argument on an elitist and social/cultural basis that assumes he alone knows how to prepare Pooja for her destiny as a "world leader" and alleges that the fundamental needs of the child, nurturing, stability and caretaking, are subsidiary to an enriched population diversity and educational climate epitomized by Pasadena. The minimization of Uniontown, Fayette County as a poor cultural and educational location for rearing an apparently academically exceptional child is belied by the evidence Pooja has developed culturally, religiously and artistically.

¶ 15 More to the point is the finding by the trial court that father was not available following the birth and during the early nurturing of Pooja. The record indicates he is a professional student and itinerant job seeker who offered no stability or emotional support for Pooja in the developing years critical to fulfillment of her potential. He seeks to uproot Pooja from an extremely productive and emotionally secure and nurturing environment and transfer her to one which, at best, would be distant from her mother's care, out of contact with her maternal grandmother, who is always there in the absence of mother, and the source of cultural and religious ties with the Hindu religion and her heritage. Father would substitute daycare for maternal care, and out-of-home supervision for in-home, round-the-clock supervision, tutoring, mother-daughter trips and learning experiences.

¶ 16 This case is only marginally a case in which the *Gruber* formula is or should be applicable. In *Lee v. Fontine,* 406 Pa.Super. 487, 594 A.2d 724 (1991), soon after *Gruber* was formulated and published, this Court had the occasion to determine the scope and application of *Gruber* in relocation cases. The *Fontine* Court stated:

Appellant contends a recent decision by a panel of this Court in *Gruber v. Gruber,* 400 Pa.Super. 174, 583 A.2d 434 (1990), has altered the 'best interests' standard to a more specific three-prong test in resolving custody relocation disputes. *Gruber* set forth the following factors to be *considered* by the trial court in deciding whether a custodial parent and children shall be permitted

to relocate at a geographical distance from a noncustodial parent[.]

\* \* \* \* \* \*

The *Gruber* Court took pains to assert that 'achieving "the best interests of the child" remains the ultimate objective in resolving all child custody and related matters,' but only emphasized 'that the best interests of the child are more closely allied with the interests and quality of the custodial parent and cannot, therefore, be determined without reference to those interests.' *Id.* at 183, 583 A.2d at 437–38.

While we acknowledge the refinements posited in *Gruber* in relocation cases, they do not create a new standard and we hasten to stress the polestar of our analysis in this case, just as it was in *Gruber* and a legion of prior custody cases, remains the best interests of the child, and on that basis we examine the findings of the trial court.

Two specific sections of the custody law as contained in 23 Pa.C.S. § 5301 *et seq.*, govern the court's decision in this and similar cases.

§ 5301.  **Declaration of policy**

The General Assembly declares that it is the public policy of this Commonwealth, when in the best interest of the child, to assure a reasonable and continuing contact of the child with both parents after a separation or dissolution of the marriage and the sharing of the rights and responsibilities of child rearing by both parents and continuing contact of the child or children with grandparents when a parent is deceased, divorced or separated.

This section must be considered and the court must be satisfied the moving party is not undertaking the move to defeat the declared legislative intent. In removing the child from the normal relational contact with one of the parents and/or grandparents, the sole consideration stated by the legislature is the best interest of the child. Any judicially determined preconditions amplify, but do not alter, the best interest standard.

Secondly, to assure that a review will be undertaken when a move is contemplated, the statute provides as follows:

§ 5308.  **Removal of party or child from jurisdiction**

If either party intends to or does remove himself or the child from this Commonwealth after a custody order has been made, the court, on its own motion or upon motion of either party, may review the existing custody order.

*Id.* at 725–726 (footnote omitted).

■ ¶ 17 Thus, the *Gruber* test is simply a judicially imposed series of guidelines to determine whether the interests of the parents, while not superseding the best interest of the child, are such that the child's best interests are served in permitting the parent to relocate. These standards are necessary to determine whether the parent is acting out of whim or vengeance or to avoid obligations under court imposed or agreed upon visitation and/or partial custody arrangements.

¶ 18 *Gruber*, therefore, has only superficial application to the circumstances of this case, which is better determined pursuant to the traditional concepts applicable to custody cases and the best interest of the child. Periodically, we are required to reaffirm the underlying precept of the best interest of the child in all custody matters, including changes brought about by relocation. There is a tendency in the trial of these cases, and sometimes upon review, to permit a drift into the error that once the parent has established a plausible basis for relocation, the inquiry ends. Not

so. It is not infrequent that, despite the well-concocted plan of a parent to relocate, no genuine benefit is derived by the child except from the nebulous presumption that a happier custodial parent will inure to the benefit of the child. Accordingly, courts are reluctant to deny the right of a parent to relocate despite superior benefits to a child remaining in the local jurisdiction. When the petitioning parent is not the custodial parent and, as here, never has been the primary custodial parent, short of a determination that the custodial parent is unfit or that there is some unique and highly beneficial benefit to the child in relocation, the burden faced by the non-custodial parent seeking relocation of the child is a very heavy one.

¶ 19 With that underlying foundation for reviewing this matter, it is fair to say the *Gruber* analysis alone is ill-suited to the facts of this case. Applying both a *Gruber* and best interest analysis, at the point in time of custody review, the child's best interest is controlling.

¶ 20 In similar situations, where there is a non-custodial parent and serious deficiencies in the custodial parent's situation, or no significant benefits in a third party or grandparent custodial arrangement, a *Gruber* analysis could be applicable but would be redundant, as here, if best interest clearly was established.

> [E]ven in custody cases involving the relocation of one or both parents, the ultimate objective in resolving the custody matter remains the best interests the child. The determination of a child's best interests involves the consideration of all relevant factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being. It follows then that the factors outlined in *Gruber*, if deemed relevant and likely to affect the child's physical, intellectual, moral, and spiritual well-being, should

also be applied and considered in any custody case involving the relocation of either the custodial or non-custodial parent.

*Richards v. Hepfer, supra* at 626, *quoting Clapper, supra* at 1274.

■ ¶ 21 Father has made much of mother's straying from strict adherence to the Hindu faith in her practice of Self Realization Fellowship (SRF), a non-denominational religion which teaches yoga techniques of concentration and meditation to help one further their devotion to God. The maternal grandmother, however, teaches Pooja the tenets of the Hindu religion, and as there is a Hindu temple in one room of mother's house, which Pooja calls "God's room", she learns the Hindu religion through her grandmother at home. In *Zummo v. Zummo*, 394 Pa.Super. 30, 574 A.2d 1130 (1990), this Court confirmed long-standing legal principles that the court will not interfere with the religious preferences of either parent. Moreover, the custodial parent has the right to direct the religious education and training of the child. Father's objection to mother's practices, therefore, is without merit.

¶ 22 Finally, in analyzing father's commitment to Pooja as evidenced by his actions and behavior from the time of Pooja's birth, the trial court, in his Opinion, stated:

> The next *Gruber* factor that must be considered is whether the Father's move was the result of a momentary whim. There is nothing to suggest that the Father's motive in moving to Pasadena was for anything except to improve the quality of his life. However, we would note that the Father has taken jobs in Chicago, Illinois, Washington, D.C., Princeton, New Jersey, Morgantown, West Virginia, and Pasadena, California, all within the time since Pooja's birth, to what he believed were better jobs, although he insists that he will not do so

again. It is the opinion of this Court that the father's work history suggests otherwise.

(Trial Court Opinion, Solomon, J., at 10–11.) We agree.

¶ 23 Pursuant to the court's Order, during the summer while Pooja is not attending school, she is to reside with father. Further, father can see Pooja in Uniontown the second weekend of each month during the school year. We find the trial court neither erred nor abused its discretion with respect to its custody award and visitation schedule, as it is clear the arrangements set forth by the court are most reasonable under the circumstances.

¶ 24 Order affirmed.