**Sherry B. FRANK, Appellant,**

v.

**Alan J. FRANK.**

Superior Court of Pennsylvania.

Argued May 13, 2003.
Filed Sept. 18, 2003.

Richard A. Peterson and Christopher St. John, Greenville, for appellant.

Margaret T. Lucas, Mercer, for appellant.

Before: FORD ELLIOTT, MUSMANNO, and ORIE MELVIN, JJ.

FORD ELLIOTT, J.

¶ 1 This is an appeal from the trial court's order of September 20, 2002 which

denied the parties' minor sons, Carl, age 14, and the twins, Michael and Andrew, age 13, ("the boys") standing to intervene in their own custody action. After careful review of the pertinent statutes and case law, we affirm the order of the trial court although we base our decision on different grounds. *See Weber v. Lynch,* 237 Pa.Super. 48, 346 A.2d 363, 366 n. 6 (1975) (noting that we may "uphold a decision below if there exists any proper basis for the result reached").

¶ 2 The boys' Mother and Father ("the parents") were married on August 22, 1985, separated in September of 1997, and divorced on April 12, 2000. The parents have had shared physical custody of the boys on a weekly basis since the separation. Mother filed a petition for modification of custody, seeking primary physical custody of the boys, on November 7, 2001. An evidentiary hearing took place over several days, and the boys were interviewed on two separate occasions. On May 16, 2002, an order was entered continuing the shared physical custody arrangement.

¶ 3 Mother filed a petition for reconsideration and clarification on May 30, 2002. The relief requested involved the right of the boys to practice and participate in religious activities and worship services.[1] The petition was denied on June 10, 2002. Neither parent appealed.

¶ 4 On August 2, 2002, the boys filed a petition for modification of custody and/or impose restrictions. In the petition, Mother was named guardian *ad litem.* The relief sought included granting Mother pri-

mary physical custody and permitting the boys to exercise their choice of religion. Father filed preliminary objections in which, among other things, he challenged the boys' standing to bring such an action. Oral argument was held on September 20, 2002.[2] Following the hearing on Father's preliminary objections, the trial court determined the boys' petition to be a *de facto* request for intervention by the boys. The court dismissed the petition by finding the boys lacked standing to bring an action to intervene in their own custody matter. This appeal followed in which the following two issues are raised for our consideration:

I. WHETHER THE LOWER COURT ERRED IN DISMISSING FOR LACK OF STANDING THE PETITION OF THREE MINOR CHILDREN, BY AND THROUGH THEIR NATURAL GUARDIAN, TO INTERVENE AND/OR TO MODIFY A CUSTODY ORDER GOVERNING THEIR PARENTS' EXERCISE OF CUSTODY AND PARTIAL CUSTODY RIGHTS OVER THEM.

II. WHETHER THE LOWER COURT ERRED IN DISMISSING FOR LACK OF STANDING THE PETITION OF THREE MINOR CHILDREN, BY AND THROUGH THEIR NATURAL GUARDIAN, IN THEIR OWN CUSTODY CASE SEEKING TO MODIFY A PRIOR CUSTODY ORDER TO PROTECT THE EXERCISE OF THEIR FIRST

---

1. According to the trial court's findings of fact, Father is Jewish. Mother converted to Judaism when the parties were married. After the parties separated, Mother left the Jewish faith. She is now a member of a Christian church. Father does not favor the children converting to Christianity. The boys apparently prefer Christianity, and Mother allowed the boys to be baptized without Father's consent. (Trial court opinion, 5/16/02 at 2.)

2. No record of this proceeding was made. (Trial court opinion, 5/16/02 at 3 n. 2.)

AMENDMENT RIGHTS TO FREEDOM OF RELIGION, THE RIGHT TO ASSEMBLE AND FREEDOM OF SPEECH.

Boys' brief at 3.

¶ 5 Standing has been defined as having a substantial, direct, and immediate interest in the subject-matter litigation.

A 'substantial' interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. A 'direct' interest requires a showing that the matter complained of caused harm to the party's interest. An 'immediate' interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question.

*Ken R. On Behalf of C.R. v. Arthur Z.*, 546 Pa. 49, 54, 682 A.2d 1267, 1270 (1996), quoting *South Whitehall Township Police Service v. South Whitehall Township*, 521 Pa. 82, 86–87, 555 A.2d 793, 795 (1989) (citations omitted).

¶ 6 In *Ken R.*, *supra*, our supreme court held "that a sibling does not have standing to seek court ordered visitation with a minor sibling where not specifically authorized to do so by statute." *Id.* at 57, 682 A.2d at 1271. In reaching its decision to dismiss the boys' petition for lack of standing as well as to deny their *de facto* request for intervention, the trial court relied on *Ken R.* and stated:

The zone of interests sought to be protected in custody actions was defined by the General Assembly in 23 Pa.C.S. § 5301, which provides:

[I]t is the public policy of this Commonwealth, when in the best interest of the child, to assure a reasonable and continuing contact of the child with both parents after a separation or dissolution of the marriage and the sharing of the rights and responsibilities of child rearing by both parents and continuing contact of the child or children with grandparents when a parent is deceased, divorced or separated.

'The statute recognizes the right of parents to raise their children as they see fit without unwarranted governmental intrusion.' *Ken R. On Behalf of C.R. v. Arthur Z.*, 546 Pa. 49, 55, 682 A.2d 1267, 1271 (1996).

The Supreme Court of Pennsylvania in *Ken R. On Behalf of C.R. v. Arthur Z., supra*, addressed the scope of the zone of interests Section 5301 seeks to protect with regard to standing to pursue a custody action. In that case, an action was brought on behalf of a minor child seeking visitation with her half sisters. The Supreme Court held the minor child did not have standing to pursue visitation because her interests did not fall within the zone of interests protected by the statute. *Ken R. On Behalf of C.R. v. Arthur Z., supra*. The basis for the ruling was that the statute contained no provision protecting a child's interest in maintaining a relationship with his or her siblings. *Ken R. On Behalf of C.R. v. Arthur Z.*, 546 Pa. at 55, 682 A.2d at 1270.

A careful review of Section 5301 shows it does not contain any provision protecting a child's right to cho[o]se which parent he or she resides with or what religion the child practices in contravention of a parent's choice. To do so[ ] would constitute an unwarranted governmental intrusion into the rights of parents to raise their children as they see fit because it would make a court the final arbiter between parents and chil-

dren. That role has not been authorized for courts by the General Assembly. Hence, the parties' minor sons do not have standing to pursue the action filed on their behalf.

Trial court opinion, 12/5/02 at 4–6.

¶ 7 We agree that *Ken R.* determined that a half-sister's interest in seeking visitation with her half-sisters was not within the zone of interests protected by 23 P.S. § 5301. The zone of interests protected by Section 5301 is the preservation of the relationship of parent and child, and to a limited degree grandparents and child, upon the dissolution of a marital/familial relationship. The interests of the half-sister in *Ken R.* were in conflict with those of her half-sisters' parents who were opposed to visitation. However, we cannot agree with the trial court's extension of this holding when it stated that the interests of the child who is the subject of the custody proceeding are beyond the zone of interests protected by Section 5301. To the contrary, the child is not only within the zone of interests for standing purposes, but the child's best interests define the interests of all other parties to the proceedings.

¶ 8 We recognize that there are no provisions under our Domestic Relations Code for children to bring their own custody lawsuits. Our statutes provide that parents, grandparents, certain non-relatives, and the state may represent the child's interests in custody actions. It is apparent that while a child may not be a named party in a custody suit, he or she certainly has an interest in the outcome of a custody proceeding. *See, e.g., Leigh v. Aiken,* 54 Ala.App. 620, 623, 311 So.2d 444, 446 (1975) (even though child is not a party to custody modification proceeding, "he may be said to have an interest therein"); *Verrocchio v. Verrocchio,* 16 Va.App. 314, 318, 429 S.E.2d 482, 485 (1993) (although child

is "technically not a party to the custody proceeding, the child is the subject of the custody hearing"); *Veazey v. Veazey,* 560 P.2d 382, 386 (Alaska 1977) (the child is the person most interested in litigation over his custody), *overruled on other grounds, Deivert v. Oseira,* 628 P.2d 575 (Alaska 1981). Hence, there is no need for a child to intervene in his or her own custody proceeding, and the boys' petition to intervene below is ineffectual as being redundant.

¶ 9 All of the issues presented by the boys in the August 2, 2002 petition for modification are the very issues considered by the court in the earlier custody hearing and on reconsideration. The boys' interests regarding these issues were before the court; they were interviewed by the court; their parents, as their legal guardians, represented their interests; and the court was charged with protecting those interests above all else. All other considerations are subordinate to the child's best interests including the interests of the adults. *Nonnenman v. Elshimy,* 419 Pa.Super. 597, 615 A.2d 799, 801 (1992), *appeal denied,* 535 Pa. 637, 631 A.2d 1008 (1993).

¶ 10 It seems clear to this court that Mother, acting now as guardian *ad litem* in filing the petition on behalf of the boys, is seeking to relitigate the trial court's denial of her petition for reconsideration raising these same claims. *Murphy v. Duquesne University of the Holy Ghost,* 565 Pa. 571, 599, 777 A.2d 418, 435 (2001) (holding that collateral estoppel applies when the issue decided in the prior adjudication was identical with the one presented in the later action; there was a final judgment on the merits; the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and the party against whom it is asserted has had a full and fair opportuni-

ty to litigate the issue in question in the prior adjudication).

¶ 11 In reaching its earlier decision to award shared physical custody, the trial court addressed the issue regarding parties' religious differences. The boys now claim "their right to practice the religion of their choice (Christianity), their right to assemble and their freedom of speech were being abrogated by the shared custody arrangement set by the trial court." (Boys' brief at 7.) Furthermore, the boys claim that the trial court's ruling denying their petition to intervene "handcuffs [their] attorney and undercuts the goal of the Custody Act which is designed to safeguard their best interests." (*Id.*) We disagree.

¶ 12 The desires of a child, while not controlling, are a factor the court must consider. *Myers v. DiDomenico*, 441 Pa.Super. 341, 657 A.2d 956, 958 (1995). Instantly, the boys were interviewed twice resulting in the following findings of fact:

41. When the boys were first interviewed, Carl and Michael indicated they wanted the shared custody to continue. Andrew wanted to spend more time with his mother.

42. After the first hearing, the boys and their father had a falling out when he would not abide by their wishes. As a result, they prepared a joint plan of custody wherein the mother would have primary physical custody.

Trial court opinion, 5/16/02 at 5.

¶ 13 The trial court was very clear in conveying that Mother and Father have very different styles of parenting. (*Id.* at 3, finding # 16.) Mother treats the boys as if they were adults and gives them more freedom to make their own decisions. (*Id.,* finding # 17, 19.) Father, on the other hand, is more of a traditional parent who does not give the boys the same freedom

as their Mother does. (*Id.,* finding # 20–21.) Based on the preceding, it is fairly easy to discern why the boys' custodial preference might be with Mother.

¶ 14 A child's preference for one parent must be based on good reasons, and the child's maturity and intelligence must be taken into account. *Myers, supra.* The trial court explained: "Having tasted the freedom their mother gives them, the boys resent the fact their father does not give them the same freedom. This conflict explains why the boys changed their opinion regarding custody. They were upset that their father was not respecting their opinions." (Trial court opinion, 5/16/02 at 8.) The trial court, however, believed that both parents bring something different to the parenting of the boys that the other does not and to disrupt that process would harm them. (*Id.* at 8.)

¶ 15 We also note that nowhere in the trial court's findings, discussion, or order does the court direct the practice of any particular religion. As we stated in *Boylan v. Boylan*, 395 Pa.Super. 280, 577 A.2d 218, 219 (1990), *appeal denied*, 527 Pa. 627, 592 A.2d 1295 (1991), *overruled on other grounds, G.B. v. M.M.B.*, 448 Pa.Super. 133, 670 A.2d 714 (1996), a court must take a neutral stance when parents subject their children to different religions. Here, the court pointed out that Father did not favor the boys' conversion to Christianity and that religious differences have caused a conflict. (Trial court opinion, 5/16/02 at 2–3, finding # 10, 15.) The court further observed:

The religious differences between the parties continues to adversely affect the children. The father does not hide his displeasure over the boys' practice of Christianity. The mother is not as sensitive to the father's religious views as she should be. The [boys'] baptism nev-

er should have occurred without the father's prior consent.

*Id.* at 8.

¶ 16 It is a well-established principle that a court will not interfere with the religious preferences of either parent. *Tripathi v. Tripathi,* 787 A.2d 436, 442 (Pa.Super.2001). A court can place restrictions upon a parent's right to inculcate religious beliefs if there is competent evidence that the actions present a substantial threat of present or future physical or emotional harm. *Zummo v. Zummo,* 394 Pa.Super. 30, 574 A.2d 1130, 1157 (1990).

¶ 17 In its May 16, 2002 order, the trial court directed "that each party will impress upon the children the need for religious tolerance and not permit any third party to attempt to teach them otherwise." (Trial court order, 5/16/02 at 12.) Here, there is no threat of present or future physical or emotional harm from the practice of two traditional religions, Judaism or Christianity. For children of divorce, exposure to parents' conflicting values, lifestyles, and religious beliefs may indeed cause doubts and stress. Stress, however, is not always harmful nor is it always to be avoided and protected against. *Zummo, supra.* Restrictions must be imposed

sparingly. Therefore, we find no error or abuse of discretion on the part of the trial court when it urged tolerance of each parent's religious faith.

¶ 18 The order of the trial court is affirmed.[3]

---

3. On February 3, 2003, an application for relief was filed by Mother as guardian of the boys. Prior to this date, Mother filed a request for correction or modification of the record with the trial court. The trial court denied the request, without a hearing. The relief sought by Mother included:

   (1) that the Superior Court order the trial court to correct the record transmitted to the Superior Court by placing in the record verification that the trial court directed that Carl Frank, Michael Frank and Andrew Frank be and are permitted to read their Christian Bibles and discuss Christianity in the privacy of their rooms while at Appellee/Defendant/Father's residence;

   (2) that the Superior Court enter an order recognizing that the trial court orally

directed in Chambers and from the bench in open court that Appellee/Defendant/Father allow Carl Frank, Michael Frank and Andrew Frank to read their Christian Bibles and discuss their Christian beliefs in the privacy of their rooms while at Appellee/Defendant/Father's resident; and

   (3) allow the parties to supplement their briefs to include argument on how the trial court directive impacts the issues pending in this appeal.

"Rule 1926 Application/Suggestion for Correction or Modification of Trial Court Record," 2/3/03 at 3–4.

   The boys' application for relief is denied. It is the obligation of the parties to insure that proceedings are made of record and transcribed.