**Witherite v. Witherite**

*Brian K. Marshall,* for plaintiff.
*Kimberly Hamilton,* for defendant.

RUEST, *J.,* July 30, 2009—Presently before the court is a complaint for custody filed by plaintiff Julie L. With-

erite on October 2, 2008. An interim order was entered on November 5, 2008. A hearing was held on March 16, 2009, and briefs submitted on or about May 1, 2009.

## FINDINGS OF FACT

(1) The parties, Carl E. Witherite Jr. (Father) and Julie L. Witherite (Mother) are husband and wife, having been married on December 31, 1998.

(2) The parties are the parents of one minor child, Alex Witherite, whose date of birth is July 18, 1996.

(3) Pursuant to the court's order of November 5, 2008, the parties share legal custody, and Mother has primary physical custody, with Father having periods of partial physical custody every other weekend and at such times as may be arranged between the parties.

(4) Mother resides in a two-bedroom rented residence at 106 Water Street, Centre Hall, Centre County, Pennsylvania.

(5) Mother's residence is in the Penns Valley Area School District.

(6) Father resides with his parents at 110 Hill Street, Unionville, Centre County, Pennsylvania.

(7) Father's residence is in the Bald Eagle Area School District.

(8) Alex is in the seventh grade at the Penns Valley Area High School.

(9) Mother has a son, Philip, from a prior relationship. Philip is in the 12th grade at Bald Eagle Area High School.

(10) Mother has had primary physical custody of Philip for much of Alex's life, so that until recently, Alex and Philip lived together most of the time. Philip went to live with his father in the spring of 2008.

(11) Father has two adult daughters from a prior relationship.

(12) Alex is healthy, as are both of the parties.

(13) The parties separated on or about September 22, 2008. Wife thereafter filed a petition to Centre County no. 2008-4135 under the Protection From Abuse Act on September 26, 2008, and a modified and continued temporary PFA order was entered on October 16, 2008, by stipulation of the parties. As part of the stipulated order, Mother agreed to drop the temporary PFA order no later than three months after the entry of a final decree in divorce and/or the equitable distribution was completed. There were no allegations of abusive behaviors by Father against Alex.

(14) Mother filed an action in divorce in the Court of Common Pleas of Centre County, Pennsylvania on October 2, 2008.

(15) An individual by the name of Mike Bower has been staying overnight at Mother's residence. Mother denies that she and Mr. Bower are involved in an intimate relationship, but instead claims that he is staying with her as a friend who needs her to care for him after an operation.

(16) When the parties separated, Father moved to his parents' three-bedroom home in Fleming, Centre County, Pennsylvania, and he continues to reside there.

The home is on approximately six acres of ground. Father would like to purchase a trailer, but is unable to make any financial plans until the equitable distribution of the parties' property is resolved pursuant to the divorce.

(17) Father has a high school education and is employed as a miner with Graymont, where he has worked for 11 years.

(18) Father works swing shift, so one week he works the 6 a.m. to 2 p.m. shift, and the next week he works the 2 p.m. to 10 p.m. shift.

(19) While Mother claims to be employed from 6:45 a.m. to 2:45 p.m., she testified that she is receiving no hours at the present time.

(20) Mother has a high school education and is trained as a licensed practical nurse through the Central Pennsylvania Institute of Science and Technology.

(21) When Alex was young, Mother was not employed and was the child's primary caretaker.

(22) In the past, Alex has been an average student. He is doing poorly in the seventh grade, and has received incompletes in some of his classes.

(23) Mother has taken steps, including obtaining internet access and a second set of textbooks from Alex's school, so that she may monitor his academic progress and assist him with his homework and assignments.

(24) As of the time of the hearing, Alex was improving in his attitude toward academics and recently received a S.T.A.R. award in school.

(25) Mother assisted Alex with becoming a member of the swim team in summer 2008, and took him to his daily swim practices and weekly swim meets.

(26) Alex is now participating in the track program at Penns Valley Area High School.

(27) Prior to the parties' separation during the summer of 2008, during the weeks when Father was on the 2 p.m. to 10 p.m. shift, Father would leave for work several hours early, rather than spending time with Alex.

(28) Alex's maternal grandmother, Carol Solt, lives in Bellefonte, is very involved in his life, and involves Alex in various activities, including camping. In addition she attends Alex's extracurricular activities.

(29) Alex's paternal grandparents, in whose residence Father resides, are 67 years of age and are both retired.

(30) They would be available to care for Alex when Father works the night shift. Alex's grandfather has been diagnosed with cancer, but is currently doing well.

(31) Alex's paternal grandmother does not drive.

(32) Alex has a good relationship with all of his grandparents.

(33) Alex has his own bedroom in both residences.

(34) Mother's activities with Alex include riding a four-wheeler with him and going camping. Mother lets Alex drive the four-wheeler at her house and she reports that she supervises Alex from the house by watching him through a window.

(35) Father has serious concerns about Alex being permitted to drive the four-wheeler on his own. Father believes that Mother's four-wheeler is much too big for Alex's age and size and that an accident would seriously injure or even kill Alex, particularly if the four-wheeler turned over on him. Father showed the court a video segment that Alex sent him on his cell phone, riding the four-wheeler in his mother's driveway.

(36) Father and Alex enjoy hiking, fishing and hunting together. They also spend time visiting with relatives, many of whom live in the area.

(37) If Father's request for primary custody of Alex is granted, Alex would need to change from the Penns Valley School District to the Bald Eagle Area School District where his half brother is enrolled.

(38) The court interviewed Alex in chambers. Alex clearly loves both of his parents and did not explicitly state that he wanted to live with one parent or the other.

## CONCLUSIONS OF LAW

(1) The paramount concern of the court in any custody matter is the best interest of the child. *McMillen v. McMillen,* 529 Pa. 198, 602 A.2d 845 (1992).

(2) That which constitutes the best interest of a child is a fact-specific, case-by-case analysis of "all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." Sawko v. Sawko, 425 Pa. Super. 450, 454, 625 A.2d 692, 693 (1993), citing *Lee v. Fontine,* 406 Pa. Super. 487, 594 A.2d 724 (1991).

(3) There is no single overriding factor; rather, the court must consider every fact relevant to the physical, emotional, intellectual, moral, and spiritual well-being of the child in determining the best interest of the child. *Rowles v. Rowles,* 542 Pa. 443, 668 A.2d 126 (1995).

(4) Factors relevant to the custody decision include the character and fitness of the parties seeking custody, the nature of proposed custodial homes, their ability to adequately care for the child and their ability to financially provide for the child. *Moorman v. Tingle,* 320 Pa. Super. 348, 467 A.2d 359 (1983).

(5) The preference of a child in a custody case, although not controlling, is a factor to be carefully considered, as long as it is based on good reason. *E.A.L. v. L.J.W.,* 443 Pa. Super. 573, 662 A.2d 1109 (1995).

(6) At the outset of a custody dispute, both parents are on equal footing, and each has the burden of proving, by a preponderance of the evidence, that their having primary custody is in the best interest and permanent welfare of the minor child. *Murphy v. Hatala,* 350 Pa. Super. 433, 504 A.2d 917 (1986).

(7) When both parents are otherwise fit, one parent's role as the primary caretaker may be given weight as the determining factor by the court. *Wiskoski v. Wiskoski,* 427 Pa. Super. 531, 629 A.2d 996 (1993), *alloc. denied,* 536 Pa. 646, 639 A.2d 33 (1994).

## DISCUSSION

The paramount concern of the court in any custody matter is the best interest of the child. *McMillen v. Mc-*

*Millen,* 529 Pa.198, 602 A.2d 845 (1992). That which constitutes the best interest of a child is a fact-specific, case-by-case analysis of "all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *Sawko v. Sawko,* 425 Pa. Super. 450, 454, 625 A.2d 692, 693 (1993), citing *Lee v. Fontine,* 406 Pa. Super. 487, 594 A.2d 724 (1991).

Alex has primarily resided with Mother since the parties' separation. While Father has some legitimate concerns, Alex appears to be doing well in this current arrangement. When his grades dropped, Mother contacted the school and took actions to help him. She obtained internet access and a second set of textbooks so she could monitor his homework assignments and his progress. His grades began to improve. Mother has also arranged for extracurricular activities for Alex, including swimming and track.

Father has been only marginally involved in Alex's academic and extracurricular activities. Father's work schedule may be partially to blame, but even when his schedule permitted, he did not readily involve himself in his son's life. If custody were to be changed, and Alex placed in Father's primary custody, he would have to switch school districts. It is not clear this would be beneficial to Alex. Additionally, if Alex wanted to participate in sports and other extracurricular activities, transportation could be a problem due to Father's work schedule.

Father does present valid concerns regarding Mother's possible lack of supervision while Alex rides her four-wheeler. Obviously, Mother should supervise Alex at all

times, and he should always wear a helmet when riding any four-wheeler.

It is clear that both parents love Alex and want what is best for him, and Alex loves both of his parents. When the court spoke with Alex, he did not indicate that he preferred to live with either parent. He did indicate that he wanted to spend more time with Father. After careful review of all the relevant factors in this case, the court concludes that the best interests of Alex will be served by keeping primary physical custody with Mother.

Accordingly, the following is entered:

## ORDER

And now, July 30, 2009, it is ordered and decreed as follows:

(1) Mother and Father shall have shared legal custody of Alex.

(2) Mother shall have primary physical custody subject to Father's periods of partial physical custody.

(3) Father's periods of partial physical custody shall be exercised as agreed upon by the parties.

(4) If Mother and Father cannot agree upon a schedule, including vacations and holidays, this court will address the schedule upon petition of either party.

(5) Both parties shall ensure at all times that Alex is properly supervised.