J-A13021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| B.H. AND D.H., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| U.K.H. AND B.W.H., | |
| Appellees | No. 1907 WDA 2014 |

Appeal from the Order Entered October 17, 2014
In the Court of Common Pleas of Washington County
Civil Division at No(s): No. 5533 of 2013

BEFORE: PANELLA, SHOGAN, and OTT, JJ.

MEMORANDUM BY SHOGAN, J.:            **FILED JUNE 18, 2015**

B.H. and D.H., paternal grandparents ("Grandparents"), appeal from the order denying their exceptions to a partial physical custody report and recommendation regarding their minor grandchildren, T.H., D.H.1,[1] and K.H., ages seventeen, ten, and nine, respectively (collectively, "the Children"). We affirm.

Grandparents are the parents of B.W.H. ("Father")[2] and the in-laws of U.K.H. ("Mother"). Mother had obtained full legal and physical custody of the Children pursuant to a custody order dated February 22, 2013. In

---

[1] Because Grandfather D.H. and child D.H. have the same initials, the trial court referred to the child as D.H.1 throughout its opinion. Trial Court Opinion, 12/9/14, at 2 n. 2.

[2] Father's parental rights were terminated in July 2014. He is not a party to this appeal.

September 2013, Grandparents filed a complaint for partial physical custody of the Children. Custody Conference Officer Dawn L. Haber ("CCO Haber") scheduled a conciliation conference for December 13, 2013. In response to Mother's request for a continuance of the conference, the trial court entered an interim order granting Grandparents visitation on December 26, 2013, without Father being present. Order, 12/3/13. The conciliation conference was rescheduled to March 11, 2014.[3] In a second interim order, the trial court continued Mother's sole physical custody of the Children and granted Grandparents visitation on the Saturday before Easter and every other Saturday for five hours, beginning on May 3, 2014, without Father being present. Interim Order, 4/8/14, at ¶¶ 4–6.

CCO Haber conducted a partial custody hearing on May 23, 2014, at which Mother, Grandmother, T.H. and D.H.1 testified.[4] CCO Haber subsequently issued a report, setting forth forty-three findings of fact, as follows:

_____

[3] The certified record does not indicate if the conference was held.

[4] The certified record does not include notes of testimony from the May 23, 2014 partial custody hearing. Moreover, Grandparents did not attempt to comply with our appellate rules by preparing "a statement of the evidence or proceedings from the best available means, including [their] recollection." Pa.R.A.P. 1923. *See In re G.T.*, 897 A.2d 1197, 1199 (Pa. 2006) (citing *Commonwealth v. Williams*, 715 A.2d 1101, 1106 (Pa. 1998)) (holding that rules of appellate procedure require appellant to provide complete record on appeal, including requesting transcription of testimony germane to appeal). However, as discussed above, even absent the missing transcript, the evidence contained in the record supports the trial court's conclusion.

- 2 -

1. [Grandparents] live on Blackdog Hollow Road in Clarksville, PA.

2. Father live[s] two doors away from [Grandparents] on Blackdog Hollow Road in Clarksville, PA.

3. Prior to the Order of December 3, 2013, [Grandparents] last saw [the Children] in January, 2013.

4. Mother and Father lived with [Grandparents] for two years when [T.H.] was a baby.

5. Mother and Father lived two doors away from them on Blackdog Hollow Road in Clarksville, PA. until they separated in 2009.

6. [Grandparents] saw the [Children] when Father had custody.

7. On November 5, 2012 a PFA was entered against Father for threatening [M]other at 2012-7106.

8. Criminal charges were levied against Father for an altercation with his oldest son. Charges were also levied against [T.H.].

9. The Court signed an Order for special relief limiting Father to supervised visitation on December 28, 2012.

10. [Grandparents] permitted Father to have custody during a visit in January, 2013 contrary to the December 28, 201[2] Court Order.

11. [Grandmother] claimed she did [not] understand why her visits were terminated after this incident.

12. Mother testified she told [Grandmother] that Father's contact was limited by Court Order.

13. [Grandparents] appeared at the District Justice office to testify on Father's behalf regarding the altercation with his oldest son.

14. [Grandmother] testified that she doesn't believe that Father abused Mother or the [C]hildren.

15. Grandmother also testified that she knows the [C]hildren are in counseling but believes that Mother is as much to blame for their mental health problems as Father.

16. Grandmother also testified that she told the [C]hildren that it is Mother's fault that the [C]hildren have no family as she was cheating on Father.

17. Grandmother admitted that she approached the younger children at school and told them that she was going to get custody of them.

18. Grandmother testified that [T.H.] had changed and no longer wants to talk to them.

19. Grandmother testified that the [C]hildren want to see their Father and she had [K.H.] write a letter to her Father while at [G]randmother's home.

20. Grandmother testified that she did not believe [G]randfather hit [D.H.1] during the last visit.

21. [Grandfather] was present [at the hearing] but did not testify.

22. [T.H.] age 16 testified he did not have a relationship with his grandparents.

23. [T.H.] testified that he was concerned about the safety of his younger siblings while visiting [Grandparents] because his Father lived nearby and that Grandfather had hit [D.H.1] during the last visit.

24. [T.H.] testified that [G]randmother told him that his Mom cheated on his Father and was too [sic] blame for the marriage ending.

25. [T.H.] testified that the Grandparents just want to see them on holidays to save face with the extended family.

26. [D.H.1], age 10 testified that his father had grabbed him and that he was afraid of his Father.

27. [D.H.1] testified that he was afraid of his grandfather. His grandfather had hit him on the last visit because he got the quad dirty.

28. [D.H.1] testified that his grandparents do not like his Mother.

29. [D.H.1] testified his grandmother told him that he should live with them.

30. [D.H.1] testified that he did not feel safe at his grandparents[' house]. He would see them if a police officer supervised the visits.

31. [D.H.1] enjoys seeing his cousins during visits with [G]randparents.

32. [Mother] testified that she was abused by Father through out [sic] their marriage.

33. Mother testified that after they separated Father started to abuse [T.H.] during visits.

34. When [T.H.] stopped seeing his Father, Father became abusive toward [D.H.1].

35. Mother informed Grandmother of the abuse but [Grandmother] told her that [the] men [in the family] do this.

36. Mother feels there is [a] culture of abuse in the [H.] family.

37. Mother testified that the [C]hildren are very antsy before any visits with [G]randparents.

38. [T.H.] is on medication for stress and anxiety.

39. The [C]hildren attend therapy.

40. The younger children were very upset when Grandmother approached them and told them they were going with her.

41. [Mother] indicates that [G]randparents did not have a relationship with the [C]hildren independent of the parents. They did not babysit.

42. [Mother] did not hear from [G]randparents from January 2013 to July 2013.

43. Mother feels that [G]randparents' partial custody should be suspended so the [C]hildren can heal.

Report and Recommendation, 6/5/14, at 2–4. CCO Haber recommended no partial physical custody by Grandparents. *Id.* at 4.

Relying on CCO Haber's Report and Recommendation, the trial court entered an order suspending Grandparents' visitation and denying their complaint for partial custody, subject to exceptions being filed within twenty days. Order, 6/5/14, at ¶¶ 4–6. Grandparents filed exceptions on June 23, 2014, and a brief in support; Wife filed a brief in opposition. "On October 17, 2014, after oral argument, a review of the Report and Recommendation of CCCO Haber, and a review of the parties' briefs and pertinent case law," the trial court denied the exceptions, thereby finalizing its June 5, 2014 order. Trial Court Opinion, 12/9/14, at 2–3. Grandparents filed the instant appeal on November 17, 2014. Grandparents and the trial court complied with Pa.R.A.P. 1925.

On appeal, Grandparents state the following questions for review:

1. Whether the trial court erred as a matter of law by utilizing a repealed statute — 23 Pa. C.S.A. § 5312 — in forming the legal basis of its Order, and therefore failed to consider the requisite factors set forth in § 5328(a) and (c)?

2. Whether the trial court erred by concluding that granting [Grandparents'] Petition for partial physical custody was not in the Children's best interest?

3. Whether the trial court erred by failing to consider the previous and established relationship between [Grandparents] and the Children, as required by 23 Pa. C.S.A. §5328(c)(1)(i).

4. Whether the trial court erred as a matter of law by considering matters or factual allegations beyond the scope of the factors set forth in 23 Pa. C.S.A. 5328; specifically, the trial court considered the alleged conduct of the Children's Father/Appellee when determining whether to grant [Grandparents] partial physical custody of the Children and whether the same was in Children's best interest?

5. Whether the trial court erred in concluding that [Grandparents] would interfere with the parent-child relationship as a result of a perceived animus by [Grandparents] against Appellee/Mother?

6. Whether the trial court's conclusion that [Grandparents] intended to reintroduce Children to Appellee/Father, was against the weight of the evidence?

Grandparents' Brief at 21–22 (reformatted to single space).[5]

We apply the following standards when reviewing a custody decision:

Our standard of review over a custody order is for a gross abuse of discretion. If a trial court, in reaching its conclusion,

_____

[5]   Question 5 appears in Grandparents' Pa.R.A.P. 1925(b) statement of errors as issue number 6. Question 6 appears in Grandparents' Pa.R.A.P. 1925(b) statement of errors as issue number 5. Moreover, Grandparents' Pa.R.A.P. 1925(b) statement included two additional issues. Issue 7 challenged the trial court's denial of "any periods of custody with Children." Pa.R.A.P. 1925(b) Statement, 12/1/14, at ¶ 7. Issue 8 challenged the trial court's failure to use "less harsh means . . . while still addressing the two concerns of the [c]ourt." *Id.* at ¶ 8. Grandparents have abandoned these two issues on appeal. Grandparents' Brief at 21–22.

overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused. Our scope of review over custody disputes is broad; this Court is not bound by the deductions and inferences the trial court derives from its findings of fact, nor must we accept the trial court's findings of fact when these findings are not supported by competent evidence of record. Our paramount concern in child custody matters is the best interests of the children.

*L.A.L. v. V.D.*, 72 A.3d 690, 692 (Pa. Super. 2013) (quoting *Yates v. Yates*, 963 A.2d 535, 539 (Pa. Super. 2008) (citations omitted)).

A grandparent's right to partial physical custody is governed by two statutes, 23 Pa.C.S. § 5325 (standing)[6] and 23 Pa.C.S. § 5328(c) (factors). Where custody or visitation is concerned, "our paramount concern is that the disposition of the matter reflects what is in the best interests of the child." *Tripathi v. Tripathi*, 787 A.2d 436, 439 (Pa. Super. 2001) (citation omitted). This is equally true in cases involving grandparents' rights to visitation or custody. We have emphasized, "[I]t is the grandparents' burden to demonstrate partial custody or visitation is in the best interest of the children and will not interfere with the parent-child relationship." *Fausey v. Hiller*, 851 A.2d 193, 196 (Pa. Super. 2004).

---

[6] Although Grandparents' standing was not an issue in this case, the trial court determined that they have standing to seek partial physical custody under 23 Pa.C.S. § 5325(2) because the parents had been separated for more than six months, since 2009. Trial Court Opinion, 12/9/14, at 3.

Upon review of the parties' briefs, the certified record, and the relevant case law, we conclude that the thorough, well-reasoned Pa.R.A.P. 1925(a) opinion of the Honorable Valarie Costanzo completely and accurately disposes of the issues Grandparents raise in this appeal. We, therefore, affirm the trial court's order denying Grandparents' exceptions on the basis of its December 9, 2014 opinion. The parties are instructed to attach a copy of that opinion to this memorandum in the event of future proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/18/2015

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | | |
|---|---|---|---|
| B.H. and D.H., | ) | | |
| | ) | | |
| Appellants, | ) | | |
| | ) | Nos. | 2013-5533 |
| v. | ) | | 1907 WDA 2014 |
| | ) | | |
| U.K.H. and B.W.H., | ) | | |
| | ) | | |
| Appellees. | ) | | |

**OPINION PURSUANT TO Pa.R.A.P. 1925(a)**

This matter comes before the Court upon B.H. and D.H.'s appeal to the Superior Court

from an order of this Trial Court dated October 17, 2014 (hereinafter referred to as "Order"). The

Order denied a number of Exceptions raised by the Appellants to a partial physical custody

Recommendation and Report. The Appellants filed an appeal of the Order to the Superior Court

on or about November 17, 2014. Thereafter, on November 18, 2014, this Trial Court directed

the Appellants to file a Concise Statement of Errors complained of on appeal pursuant to Pa.

R.A.P. 1925(b).[1] On or about November 26, 2014, Appellant filed a concise statement, which

includes eight matters complained of on appeal. The Trial Court will address the issues below.

**PROCEDURAL HISTORY**

On September 10, 2013, B.H. and D.H. (hereinafter referred to as "Appellants") filed a

Complaint for Partial Custody of U.K.H. and B.W.H.'s three minor children, T.H., ▮▮▮▮▮

---

[1] As this is a custody matter, Appellant was required to file a concise statement of errors complained of on appeal simultaneously with the notice of appeal. Pa.R.A.P. 905(a)(2). Because Appellants failed to do so, the Trial Court issued the above-referenced order.

████████), age 17, D.H.1,[2] ████████████, age 10 and K.H., ████████████ age 9.

U.K.H., the children's mother, has sole legal and primary physical custody of the children pursuant to a custody order dated February 22, 2013 at docket number 2012-6253. Under that order, B.W.H., the father of the children, was granted supervised partial custody of the three minors on the condition that he completed anger management classes as well as a drug and alcohol evaluation.

On January 21, 2014, Appellee U.K.H. filed a petition to involuntarily terminate B.W.H.'s parental rights to the three children that are the subject of the instant appeal. On June 30, 2014, a hearing was held on the petition before the Honorable Judge Katherine Emery. On July 31, 2014, Judge Emery issued an opinion and order that granted U.K.H.'s petition. Accordingly, B.W.H.'s parental rights to the three children, T.H., D.H.1, and K.H. were terminated.

On March 11, 2014, a custody conciliation meeting was scheduled before Custody Conference Officer L. Dawn Haber (hereinafter referred to as "CCCO Haber.") Every party but B.W.H. attended that meeting. Thereafter, on May 23, 2014, every party but father B.W.H. attended a two hour partial custody hearing before CCCO Haber, at which testimony was taken. On June 3, 2014, after a review of CCCO Haber's Report and Recommendation, and pursuant to Rule 1915-4-2(b) and Washington County Local Rule 1915.31, the Trial Court issued an order denying Appellants petition for partial physical custody.

On or about June 23, 2014, Appellants filed a number of Exceptions to CCCO Haber's Report and Recommendation. Appellant filed a brief in support of its Exceptions, and Appellee U.K.H. filed a brief in opposition to the Exceptions. On October 17, 2014, after oral argument, a

---

[2] Appellant D.H. and child D.H have the same initials. For purposes of clarity, the child with the initials D.H. who is ten years old, will be referred to as D.H. 1 throughout this opinion. The Appellant will be referred to as D.H.

review of the Report and Recommendation of CCCO Haber, and a review of the parties' briefs and pertinent case law, the Trial Court denied Appellants Exceptions. It is this order that Appellants now seek to appeal.

## **OPINION**

Appellants have filed eight matters complained of on appeal. For purposes of clarity, the Trial Court has condensed these matters where appropriate.

1. <u>Whether CCCO Haber and the Trial Court erred by relying on 23 Pa.C.S.A. § 5312, which was repealed on November 23, 2010.</u>

Appellants first argue that CCCO Haber and the Trial Court erred by relying on Section 5312, which was repealed by the General Assembly in 2010. Appellants' argument is based upon a minor typographical error, and therefore lacks any merit. In Pennsylvania, a grandparent's right to partial physical custody is primarily governed by two statutes, 23 Pa.C.S.A. § 5325 and 23 Pa C.S.A. § 5328(c). Under Section 5325, grandparents are able to petition the court for custody in three situations. Because standing is not an issue raised in this appeal, nor was it raised before this Court, for purposes of this appeal the Trial Court will assume Appellants have met the standing requirements set forth in Section 5325. Based on the pleadings and oral argument, Appellants have standing to file for partial custody of the children under Section 5325(2) which permits grandparents to file for custody where "the parents of the child have been separated for a period of at least six months or have commenced and continued a proceeding to dissolve their marriage."

In ordering partial physical custody to grandparents who meet the standing requirements described above, Section 5328(c) requires the Trial Court to consider the following factors:

> (i) the amount of personal contact between the child and the party
> prior to the filing of the action;

3

(ii) whether the award interferes with any parent-child relationship; and

(iii) whether the award is in the best interest of the child.

23 Pa.C.S.A. § 5328(c)(1)(i)-(iii). In the instant matter, the Report and Recommendation clearly reflects that CCCO Haber considered these three factors. For example, paragraphs 4, 5, 6, 41, and 42 describe the amount of contact the children had with the Appellants prior to the filing of this action for partial custody. Paragraphs 14, 15, 16, 17, 20, 24, 28, 29, and 40 contain findings from the testimony before CCCO Haber that touch upon whether an award of custody would interfere with U.K.H.'s relationship with her three children. Lastly, paragraphs 10, 13, 14, 16, 17, 18, 20, 22, 23, 24, 27, 28, 30, 35, 37, 38, 39 and 40 include findings that pertain to whether a grant of partial physical custody to Appellants would be in the best interests of the three children.

Appellants appear to hang their argument on the fact that CCCO Haber's report cites to Section 5312. The language of repealed Section 5312, which was entitled, "When parents' marriage is dissolved or parents are separated", stated the following:

> In all proceedings for dissolution, subsequent to the commencement of the proceeding and continuing thereafter or when parents have been separated for six months or more, the court may, upon application of the parent or grandparent of a party, grant reasonable partial custody or visitation rights, or both, to the unmarried child if it finds that visitation rights or partial custody, or both, would be in the best interest of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the party and the child prior to the application.

23 Pa.C.S.A § 5312. The language of this repealed statute is identical in meaning to the language set forth in Section 5328(c). Assuming CCCO Haber did rely upon Section 5312, instead of Section 5328(c), the requirements contained in both statutes are identical in meaning.

Regardless, this Trial Court assessed the Appellants exceptions according to Section 5328(c) and determined that based upon the three factors it was not in the best interests of the

4

three children for Appellants to be granted partial physical custody. As a result, Appellants claim lacks any merit.

2. Whether CCCO Haber and the Trial Court erred by determining that granting Appellants' petition for partial physical custody of the children would not serve the best interests of the three children.

3. Whether CCCO Haber and the Trial Court erred by failing to consider the previously established relationship between the Appellants and the children as required by 23 Pa.C.S.A. § 5328(c)(1)(i).

4. Whether CCCO Haber and the Trial Court erred by finding that Appellants have an animus against the children's mother, U.K.H., and that such animus would interfere in the relationship between the children and their mother.

5. Whether CCCO Haber and the Trial Court erred by denying Appellants any periods of custody with the children.

As described above, Section 5328(c) requires the Trial Court to consider the three following factors when order partial physical custody to a grandparent:

> (i) the amount of personal contact between the child and the party prior to the filing of the action;
> (ii) whether the award interferes with any parent-child relationship; and
> (iii) whether the award is in the best interest of the child.

23 Pa.C.S.A. § 5328(c)(1)(i)-(iii). This Trial Court is well aware that "Whether the matter concerns custody or visitation, [its] paramount concern is the best interest of the child. McMillen v. McMillen, 529 Pa. 198, 202, 602 A.2d 845, 847 (Pa. 1992). "This is equally true in cases involving whether grandparent visitation rights should be awarded." Norris v. Tearney, 422 Pa. Super. 246, 248, 619 A.2d 339, 340 (Pa. Super. 1993).

In the instant matter, CCCO's Haber Report and Recommendation addressed each factor set forth in Section 5328(c) and determined that after a hearing, where testimony was taken from U.K.H., Appellant B.H., children T.H. and D.H.1, it was not in the best interests of the children

5

for the Appellants to have partial physical custody. During oral argument before this Court, Appellants' attorney had the opportunity to argue why granting Appellants partial custody would be in the children's best interests. After a review of the record, CCCO Haber's Report and Recommendation, and the factors set forth in Section 5328(c), the Trial Court determined that partial custody between Appellants and the children would not serve their best interests.

Factor (i) requires this Court to inquire into the amount of personal contact between Appellants and the three children before Appellants filed the instant custody action. Appellants filed their custody complaint on September 9, 2013. The Appellees had lived with the Appellants when their oldest child, T.H. was a baby. Thereafter, Appellees lived two houses away from Appellants until the Appellees separated sometime in 2009. On December 3, 2013 the Honorable Judge Gary Gilman entered an order granting Appellants five hours of custody time with the children. Prior to that order, the last time Appellants had seen the children was in January of 2013. The reason for the lapse in visitation with the children is because Appellants had permitted their son, Appellee B.W.H., to visit with the children in clear violation of the Appellees' custody order, dated December 28, 2012 at docket number 2012-6253.

T.H. testified that he does not have a relationship with his grandparents. The children's mother, Appellee U.K.H., testified that the Appellants never had a relationship with the children independent of the Appellees. She also stated that she did not hear from the Appellants from January 2013 through July 2013.

Based on the above testimony, the Trial Court determined that Appellants and the children did not have much personal contact prior to the Appellants filing an action for partial custody.

6

Factor (ii) requires the Trial Court to consider whether an award of custody to grandparents would interfere with any parent-child relationship. During the partial custody hearing before CCCO Haber, many of the witnesses testified to an event wherein T.H. alleged that his father, Appellee B.W.H., had hit him. Appellant B.H. testified that she did not believe that B.W.H. ever hit his son T.H. In addition, Appellant B.H. stated that both she and her husband, D.H., had testified against T.H. and on behalf of B.W.H. at a magisterial district judge hearing concerning the alleged altercation.

Appellant B.H. also stated that she had told the children that it was the children's mothers' fault, Appellee U.K.H., that the children have no family because she cheated on their father, Appellee B.W.H. Furthermore, T.H. testified that his grandmother, Appellant B.H., told him that his mother cheated on his father and that it was her fault that the marriage ended. B.H. also testified that she approached the younger children at school and told them that she was going to get custody of them. D.H.1 testified that his grandmother told him that he should live with the Appellants. This Court cannot fathom why B.H., the children's grandmother, would relay such messages to the children. B.H.'s conduct in this regard is clearly detrimental to the children and inapposite to their best interests.

Based on the testimony presented at the partial custody hearing, this Trial Court determined that an award of partial custody to Appellants would interfere with the parent-child relationship that Appellee U.K.H. currently enjoys with her children. Based on the testimony presented, the Court believes that Appellant B.H. would make more harmful disparaging remarks about the children's mother to the children if she were granted partial custody.

Factor (iii) requires this Court to determine whether an order of partial custody to Appellants would be in the children's best interests. During the hearing, several of the witnesses

7

testified to an event where Appellee B.W.H. and his son T.H. got into a physical altercation. Afterwards, both were criminally charged. During a hearing before a magisterial district judge, Appellants testified on B.W.H.'s behalf and against T.H.

As noted previously, B.H. admitted that she told the children she was going to get custody of them and that their parents' divorce was a result of their mother's infidelity. T.H. stated that he had no relationship with Appellants. T.H. testified that he would fear for the safety of his younger siblings if they were left in Appellants' care.

D.H.1, who is ten years old, testified that his grandfather, Appellant D.H., had hit him during their last visit because he had "got the quad dirty." D.H.1 further stated that he did not feel safe at the Appellants' home, but that he would feel comfortable during visits with Appellants if the police were present.[3] The children's mother, Appellee U.K.H., testified that all of the children appear anxious before visits with Appellants, and that T.H. is currently on medication for stress and anxiety. U.K.H. also stated that the children became very upset when Appellant B.H. told the younger children during school that she was going to get custody of them.

Based on these facts, the Trial Court determined that it was not in the best interests of the children for Appellants to be granted partial physical custody. However, based on the testimony presented, the Trial Court determined that at the current time, partial physical custody would serve more as a detriment to the children, than a benefit, and consequently is not in their best interest.

In accordance with Section 5328(c) this Trial Court considered (i) the amount of personal contact between Appellants and the children; (ii) whether the award would interfere with Appellees and the children's relationship; and (iii) whether the award of custody would be in the

---

[3] K.H., the youngest child in this matter, did not testify.

8

best interests of the children. Based on these factors as well as the testimony and evidence presented, the Trial Court determined that it was not in the children's best interests for Appellants to be granted partial physical custody. As a result, Appellants appeal should be dismissed.

Appellants further argue that the Trial Court failed to consider the previously established relationship between Appellants and the children. The CCCO Haber's Report and Recommendation clearly addresses the amount of "personal contact between the child and the party prior to filing the action." During oral argument before the Trial Court, Appellants' attorney addressed the Appellants' connection with the three children. The Trial Court considered the Appellants established relationship with the children, as described in CCCO Haber's Report and Recommendation, detailed in Appellants' brief and presented at oral argument. Because the Trial Court considered this relationship in making its determination, Appellants argument is meritless and should be denied.

Appellants also assert that both CCCO Haber and the Trial Court erred by "finding" that Appellant B.H. has an animus against the children's mother, Appellee U.K.H. First, the Trial Court never made such a finding. Second, CCCO Haber's Report and Recommendation never refers to Appellant B.H. as harboring an animus against Appellee U.K.H. The Report and Recommendation does contain findings consistent with the testimony of the witnesses, wherein Appellant B.H. admitted to making negative remarks about U.K.H. to her children, which are described in the preceding paragraphs. Because there was never a finding of animus, Appellants assertion is baseless and should be dismissed.

6. <u>Whether CCCO Haber and the Trial Court erred by considering factual matters outside the scope of 23 Pa.C.S.A. § 5328(c).</u>

Appellant also argues that CCCO Haber and the Trial Court erred by considering factual matters that are not required by Section 5328. Appellants argue that the Trial Court should not have considered the conduct of the children's father, Appellee B.W.H., in analyzing whether partial custody was in the best interest of the three children. The Trial Court did not directly consider the conduct of the children's father, as his custody matter was not before the Court. Rather, the Trial Court considered the Appellants' relationship and conduct towards the children, which in some instances did tangentially involve father, Appellee B.W.H.

For instance, the Trial Court did consider the fact that the Appellants testified on behalf of their son B.W.H. and against their grandson T.H. at a criminal proceeding. In making its custody determination, the Trial Court also found it relevant that Appellant B.H. permitted Appellee B.W.H. to visit with the children, in spite of a court order that stated B.W.H. was not permitted to have supervised physical custody of the children until he satisfied certain conditions. Clearly, any consideration the Trial Court gave to father's conduct was de minimus and did not factor into its decision to deny Appellants petition for partial physical custody.

Although the Trial Court submits that it did not rely on the conduct of father in denying Appellants petition, it must address Appellants' argument that a trial court may only consider the factors set forth in 23 Pa.C.S.A. § 5328(c) in making a custody determination, a position that is clearly at odds with the statute. As our Supreme Court has explained, "[the] paramount concern in child custody cases is the best interest[s] of the child[ren]." McMillen, 602 A.2d at 846. The paragraph of Section 5328 that addresses the custodial rights of grandparents and great-grandparents states, "(1) In ordering partial physical custody or supervised physical custody to a party who has standing under section 5325(1) or (2) (relating to standing for partial physical custody and supervised physical custody), **the court shall consider the following . . .**" 23

10

Pa.C.S.A. 5328(c)(1) (emphasis added). Appellants appear to advocate that a trial court is constrained by this language and may only ever consider these three factors where determining whether a grandparent may have partial physical custody of their grandchildren. However, the statute does not require that trial courts only consider the three factors, but that triers of fact specifically consider the three specifically contained within subsection (c).

Appellants' interpretation of Section 5328(c) contradicts the spirit of the child custody statute, which requires the trial court to determine the best interest of the children. If the legislature had intended to limit the factual information a trial court could consider in making a best interest determination, the statute would have included restrictive language.

7. <u>Whether CCCO Haber and the Trial Court erred by concluding that the Appellants intended to reintroduce the children to their father, B.W.H.</u>

Appellants next assert that CCCO Haber and the Trial Court erred by finding that the Appellants seek to reintroduce the children to their father, Appellee B.W.H. The Superior Court's standard of review for factual matters is as follows:

> In reviewing a custody order, our scope and standard of review are well established. [O]ur scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

Collins v. Collins, 897 A.2d 466, 471 (Pa. Super. 2006).

11

During the partial custody hearing, Appellant B.H. admitted that she permitted her son, Appellee B.W.H., to visit with the children despite the fact that a court order stated he was not permitted to visit with his children unless he underwent a drug and alcohol evaluation and completed anger management. B.H. further stated that she did not understand why her custody visits with the children were terminated following that incident. Appellant B.H. further stated that the children wish to see their father, and that when K.H. was in her custody, B.H. had K.H. wrote a letter to her father, B.W.H.

T.H. and D.H.1 both clearly testified that they are afraid of their father. Both stated that they fear being at Appellants' home because their father lives a couple of houses down the street. The actions of Appellant B.H. demonstrate to this Trial Court that she seeks to reintroduce the children to her son, despite the fact that there is a court order in place which prohibits Appellee B.W.H. from physical custody of the children unless he satisfies the conditions described above. Because the evidence and testimony presented at the partial custody hearing establish that B.H. has sought to reintroduce the children to their father, Appellants claim is simply meritless.

## CONCLUSION

For the reasons set forth above, the Trial Court respectfully submits that the order of the Trial Court dated October 17, 2014 should be affirmed and Appellants' appeal dismissed.

DATE:                                                    BY THE COURT:

12-9-14                                                  _____, J.
                                                          Valarie Costanzo

12