J-S01016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| A.R.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| A.E.Y. | |
| Appellee | No. 1093 EDA 2015 |

Appeal from the Order Entered March 12, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): OC0704615

BEFORE:  GANTMAN, P.J., MUNDY, J., and MUSMANNO, J.

MEMORANDUM BY MUNDY, J.:                **FILED JANUARY 27, 2016**

Appellant, A.R.W. (Father), appeals *pro se* from the March 12, 2015 child custody order which, *inter alia*, provided that Appellee, A.E.Y. (Mother), continue to have primary physical and legal custody of the parties' minor child, A.S.W., born in October 2006, as originally provided by order of court entered on October 20, 2010.  Upon careful review, we affirm.

The trial court explained as follows.

> Father is presently incarcerated at [the] State Correctional Institution at Graterford, where he is serving a sentence of 21 to 53 years on aggravated assault and firearms convictions.  He has been incarcerated since his date of arrest on July 17, 2007, which was nine months after the birth of [A.S.W.].

Trial Court Opinion, 6/11/15, at 3.

On July 22, 2014, Father filed a complaint for partial physical and shared legal custody of A.S.W. The trial court convened a hearing on March 12, 2015. Father testified by telephone from SCI Graterford. In addition, Father's mother, S.W. (Paternal Grandmother) appeared to testify, as did Mother.

At the outset of the hearing, the trial court and Appellant engaged in the following exchange.

> THE COURT: … I can make the order that Mother retains primary physical custody and I could put that Father shall share legal custody, to the degree that he may have access to school and medical information concerning the child. But he cannot participate in decision making because he's in jail and [M]other is the one who has to bear all the responsibility. But he is certainly entitled to information.
>
> And then my order can further say that Father may have visitation with the child at the state institution, as arranged between [P]aternal [G]randmother and Mother. And because that is apparently happening—is that correct, sir?
>
> [APPELLANT]: That's currently what's happening.

N.T., 3/12/15, at 14-15.

Father confirmed that on July 17, 2007, he was sentenced to 21 to 53 years of incarceration, and has been in prison for nearly all of A.S.W.'s life. N.T., 3/12/15, at 11. Father testified that A.S.W. has "seen me all throughout my incarceration, on and off … I just recently saw her last week or two weeks ago." *Id.* at 12. However, Father asserted that A.S.W. should

be in private school, and should not "be taken out of this private school that can help [A.S.W.] excel." *Id.* at 31. When the trial court asked Father to identify the private school, he responded "the private school that my mother paid for … my mother can tell you the exact name of the school." *Id.* at 32. Father knew the name of the public school A.S.W. attends, but opined that it "was not the proper place" for A.S.W. *Id.* at 33.

With regard to religion, Father asserted that A.S.W. should be raised Muslim, and that Mother not wanting to force A.S.W. "to have morals and values of a certain etiquette is not right." *Id.* at 35. Concerning visitation, Father testified that "the visitation is too loose" and asked that A.S.W. "be brought to see me every two weeks, specifically," without putting the responsibility on Paternal Grandmother, and that A.S.W. be given a cell phone to communicate with Father directly. *Id.* at 36-38. Additionally, Father stated that he "also has [an] issue with the grooming of the child," and "it's important to me that [A.S.W.] have her hair done, her nails done, and all those different things." *Id.* at 41. Father expressed that he would like to have his current wife "be in [A.S.W.'s] life." *Id.* Finally, Father testified that he "would like that it be ordered" that A.S.W. "not be put on" social media. *Id.* at 41-42.

Paternal Grandmother testified that Mother "always has" allowed Paternal Grandmother to take A.S.W. to visit Father. *Id.* Moreover, Paternal Grandmother said, "although [the October 20, 2010 custody order]

says [I have] custody [of A.S.W.] every other weekend, I can see my granddaughter whenever I want to see her." *Id.* at 19.

Mother testified that relative to A.S.W.'s education, she did not mind A.S.W. attending private school, but did not "have the funds for it," and A.S.W. "made honors every report, no matter if she's in private school or public school"; as to the Muslim faith, Mother did not "want to force [A.S.W.] to do anything she [does not] want to do. She [doesn't] want to go to Islamic school and I don't want to force her to do that." *Id.* at 26-27, 43-44. Mother opined that she had "the right if I want to show my daughter on any social media." *Id.* at 43. Mother also testified that she "did not think it was fair" that she should have to take A.S.W. to see Father. *Id.* at 45. She stated, "I don't have the means to go all the way out there." *Id.*

After hearing from Father, Paternal Grandmother, and Mother, the trial court referenced, recited and reviewed the custody factors set forth in 23 Pa.C.S.A. § 5328. *Id.* at 47-51. The trial court then concluded that the October 20, 2010 order "shall remain that Mother has primary physical and legal custody of the child," and entered the March 12, 2015 order at issue in this appeal. *Id.* at 53. In addition to continuing primary physical and legal custody of A.S.W. with Mother, the order provides that Father have "legal access to all school and/or medical information concerning the child," Paternal Grandmother "may continue to have periods of partial physical custody on alternating weeks from Friday through Sunday, and/or as

otherwise agreed between Paternal Grandmother and Mother," and "Paternal Grandmother may transport the child to visit with Father in a State Correctional Institution during her periods of partial physical custody." Order, 3/12/15. The trial court noted that it "declined to enter an award of a specific visitation schedule for the child with Father in lieu of [Paternal] Grandmother's willingness to transport the child at times determined by her." Trial Court Opinion, 6/11/15, at 2.

On April 13, 2015, Father filed a timely notice of appeal.[1] On May 19, 2015, this Court, after determining that the trial court had not properly entered and docketed its April 21, 2015 order directing compliance with Pennsylvania Rule of Appellate Procedure 1925, entered an order directing Father to file a Rule 1925 statement by May 29, 2015. Father filed his Rule 1925 statement on or about May 12, 2015. This Court received the certified record, including the trial court opinion, from the trial court on June 15, 2015. Disposition in this matter was further delayed by Father's failure to file his brief by the July 15, 2015 due date, which resulted in this Court dismissing the appeal on August 14, 2015, and upon application by Father, reinstating the appeal on September 22, 2015.

On appeal, Father presents six issues for our review as follows.

---

[1] The 30th day for filing an appeal fell on Saturday, April 11, 2015, such that Father's filing on Monday, April 13, 2015 was timely. 1 Pa.C.S.A. § 1908.

1. Did the trial court err and abuse its discretion by not giving [Father] a meaningful opportunity to present testimony in support of his position and the Petition that was before the court?

2. Did the trial court err and abuse its discretion by failing to Order the recommended educational stipulations despite there being no objections by [Mother]?

3. Did the trial court err and abuse its discretion by failing to meaningfully consider the religious recommendations despite the fact that the recommendations are in the best interest of the child?

4. Did the trial court err and abuse its discretion by failing to adequately review the miscellaneous recommendations in the Petition?

5. Did the trial court err and abuse its discretion by failing to Order Shared Legal Custody and Visitation stipulations?

6. Did the trial court err and abuse its discretion and deprive [Father] of his right to Due Process by exhibiting a pre-disposition for [Mother] and by not applying a "best interest" standard?

Father's Brief at 5.

Father's six issues are interrelated in that they challenge the trial court's determinations relative to A.S.W.'s best interest, and specifically concern Father's desire for shared legal custody, particularly with regard to A.S.W.'s education and religious upbringing, as well as visitation.

Our scope and standard of review in custody matters is as follows.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court

that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. **Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record**. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted) (emphasis added).

Further, we have stated the following.

[T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006), *quoting*

*Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004).

Pursuant to Pennsylvania's Child Custody Act, in considering modification of an existing custody order, "a court may modify a custody order to serve the best interest of the child." 23 Pa.C.S.A. § 5338(a). "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual,

moral, and spiritual well-being." **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006), *quoting* **Arnold v. Arnold**, 847 A.2d 674, 677 (Pa. Super. 2004). Further, the party seeking modification of custody arrangements has the burden of showing that modification is in the child's best interest. **Ketterer**, 902 A.2d at 539 (citation omitted).

Consistent with the foregoing, the trial court was obligated to consider A.S.W.'s well-being. **J.M.R. v. J.M.**, 1 A.3d 902, 911 (Pa. Super. 2010). Upon careful review of the record, we find that the trial court did so, and discern no abuse of discretion or error of law by the trial court. The record supports the trial court's conclusion that "Father's lengthy period of incarceration and his limited contact with the child prior to incarceration render him unable to provide parental care such that he would be entitled to share in the ability to make major decisions concerning same. Moreover, Mother's willingness to allow Paternal Grandmother to take A.S.W. to see Father and the absence of any unreasonableness on her part with regard to the visitation eliminate[s] the need for a specific visitation schedule for Father." Trial Court Opinion, 6/11/15, at 16-17. Further, we find the entirety of the trial court opinion to be comprehensive in expounding on Father's issues, such that we adopt and incorporate the trial court's June 11, 2015 opinion with this Memorandum in affirming the March 12, 2015 custody order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/27/2016


RECEIVED
JUN 11 2014
CLERK OF COURT



IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
DOMESTIC RELATIONS DIVISION

RECEIVED
JUN 11 2014
CLERK OF COURT

RECEIVED
JUN 11 2014
CLERK OF COURT

A.R.W.

Appellant

VS.

A.E.Y.

Appellee

:
:
:
:
:
:
:
:
:
:
:

DOCKET NO. 0C0704615

1093 EDA 2015

BY:   DORIS A. PECHKUROW, J.

## OPINION

Appellant,   A.R.W.   ("Father") appeals from the child custody order entered March 12, 2015.

Said order provides that the order dated October 20, 2010 will remain without modification, such that Appellee   A.E.Y.   "Mother") shall retain primary physical and legal custody of the child   S. W.   , born October 15, 2006, and Paternal Grandmother,   S.W.   , shall continue to have periods of partial physical custody of the child on alternating weekends or as otherwise agreed between Grandmother and Mother. The March 2015 order further provides that Grandmother is permitted to continue to transport the child to visit with Father at the state correctional institution where he is serving a sentence, and that Father has the right of access to all school and/or medical information concerning the child.

The court declined to enter an award of a specific visitation schedule for the child with Father in lieu of Grandmother's willingness to transport the child at times determined by her.

Father filed his Notice of Appeal on April 13, 2015, but failed to include a Statement of Errors Complained of on Appeal, as required pursuant to Pa.R.App.P. 905(a)(2) and 1925(a)(2)(i). By order dated April 21, 2015, Father was directed to file said statement within twenty-one (21) days. Said Statement was then filed in accordance with the "prison rule" on May 12, 2015, as appears on documents entered by prison personnel showing the Statement was delivered to them on May 12, 2015. It was received in judicial chambers on May 21, 2015.

Procedural History

Complaints for Primary Custody and for Partial Physical Custody filed by Mother and Paternal Grandmother, respectively, in June and July, 2007, were dismissed for lack of prosecution in September, 2007. After Mother filed another Complaint for Custody in July, 2009, an order was entered on December 3, 2009, awarding her sole physical and legal custody. Father was incarcerated and did not participate in the hearing. The matter was then scheduled for a subsequent hearing, it appearing that service on Father was called into question. In the meantime, Paternal Grandmother filed a Petition for Modification in August, 2010, and a final order was entered by agreement between Mother and Paternal Grandmother on October 20, 2010, providing that Mother would retain primary physical custody and legal custody of the child and Paternal Grandmother would have partial physical custody on alternating weekends. Father participated by telephone during the hearing.

2

No further action occurred until Father filed a Complaint for Partial Physical and Shared Legal Custody on July 22, 2014. The hearing before the Master, where Father participated by telephone, was attended only by Paternal Grandmother. The matter was continued to March 12, 2015, for service on Mother.

Factual Background

Father is presently incarcerated at State Correctional Institution at Graterford, where he is serving a sentence of 21 to 53 years on aggravated assault and firearms convictions. He has been incarcerated since his date of arrest on July 17, 2007, which was nine months after the birth of the child.

Statement of Errors

Father's Concise Statement of Matters Complained of on Appeal is as follows:

And now comes, A. R. W. , the Appellant, acting pro se, who files the Concise Statement of Matters complained of on Appeal in accordance with Pa.R.A.P. 1925 (b) and the Court's Order dated April 21, 2015.

1.) The Court erred and abused its discretion by not giving the Appellant a meaningful opportunity to present testimony in support of his position and the Petition that was before the court.

2.) The Court erred and abused its discretion by failing to Order the education recommendations enumerated at 1, 2, 3, 6, 7, and 8, of the Petition for Shared Legal Custody despite the Appellee not objecting to the recommendations.

3.) The Court erred and abused its discretion by failing to meaningfully consider the religious recommendations outlined in the Petition for Shared Legal Custody despite the fact that the recommendations are in the best interest of the child. Specifically, the Court did not consider the religious recommendations relative to:
(a) Appropriate Clothing for Muslim females
(b) Foods approved for consumption by a Muslim
(c) Appropriate Rituals as delineated in the Qur'aan
(d) Appropriate burial rituals in accordance with the dictates of Islam in the event of death

3

(4.) The Court erred and abused its discretion by failing to adequately review and consider miscellaneous recommendations in the Petition for Shared Legal Custody.

(5.) The Court erred and abused its discretion by denying to Order that the Appellant be included in all major medical decision [sic] involving the minor child.

(6.) The Court erred and abused its discretion by failing to Order Shared Legal Custody and Visitation Stipulations despite it being appropriate to do so.

(7.) The Court erred by failing to provide the Appellant with an Order and Opinion stating the reasons for denying the Appellant's Petition for Shared Legal Custody.

(8.) The Court erred, abused its discretion and deprived the Appellant of his right to Due Process by exhibiting a predisposition to the position of the Appellee and by failing to apply a 'best interest of the child' standard.

## Discussion

### Predisposition of the court and a finding of best interest

Paragraph 8 of Father's Statement of Errors will be discussed first to address the applicable standard for determining the best interests of the child. He states in paragraph 8 that the court exhibited a predisposition concerning Father's petition and failed to apply a best interest standard in rendering the decision.

Father fails to reference any of the factors set forth in 23 Pa.C.S. § 5328 of the custody code in his statement of errors, and does not otherwise identify anything specific which was not considered by the court in rendering the decision. Section 5328 provides that, "In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following: ...," and the text continues

4

listing 15 factors. These enumerated factors were discussed on the record during the hearing prior to the entry of the order and will not be re-addressed herein. Notes of Testimony, March 12, 2015, at 47-52. As was noted on the record, however, many of the factors do not apply when one parent is incarcerated and will remain so for an extended period of time.

The application of the custody code when rendering a decision where a parent is incarcerated was reviewed by the Pennsylvania Supreme Court in D.R.C. v. J.A.Z., 31 A.3d 677 (Pa. 2011), where the Court concluded that, "Examination of Chapter 53 of the Domestic Relations Code in its entirety reveals that many of its provisions and certain of its commands regarding factors for the court's consideration lack relevance in the context of a request for prison visitation." Id. at 686. In that case, the issue was whether the trial court erred in denying father's petition for visitation at the prison because the required counseling set forth in subsections 5303(b) and (c) of the custody code (since replaced by Section 5329) for individuals convicted of any of the enumerated offenses was not done.

New custody code provisions effective in January, 2011, replaced the controlling provisions implicated in the D.R.C. case. However, while the new custody code eliminates mandatory counseling for individuals convicted of enumerated offenses (23 Pa.C.S. § 5329) and sets forth a list of 15 factors which must be considered when ordering any form of custody (23 Pa.C.S. § 5328), replacing the more narrow list of factors in Section 5303, a few of the Section 5303 factors are contained in Section 5328, such that the Supreme Court's reasoning is relevant to the current factors and an incarcerated parent:

> Clearly, an award of any type of physical custody is unavailable to an incarcerated parent. Similarly, it would make no sense for a court to take into consideration 'which parent is more likely to

5

encourage, permit and allow frequent and continuing contact and physical access between the noncustodial parent and child,' or assess an 'adult household member's present and past violent or abusive conduct' as required by section 5303 (a)(2) and (3). Likewise, we find that *it was not the General Assembly's intent for subsections (b) and (c) to be applied to requests for prison visitation.*"

D.R.C., at 686-87 (emphasis added).

The Court further noted that factors other than those set forth in the custody code were relevant when deciding a question of visitation with an incarcerated parent such as the age of the child, the distance and hardship in traveling to the site, who would transport the child, whether contacts were maintained in the past, etc. Id. The case was then remanded to the trial court for a hearing on father's request for prison visitation without resort to Section 5303 of the custody code.[1]

The new custody code is also silent about what factors are applicable in a child custody matter when a parent is incarcerated for a period of time. Thus, it is unknown if the appellate court will apply the reasoning and findings in D.R.C. to the instant case, or the holding in C.B. v. J.B., 65 A.3d 946, 948 (Pa.Super. 2013) (the custody code requires that the trial court address each of the factors prior to the deadline for filing an appeal), or the decision in M.O. v. J.T.R., 85 A.3d 1058 (Pa.Super. 2014) (the trial court is not required to address all sixteen factors in Section 5328 when the court decides a discrete and narrow issue to a materially unchallenged custody arrangement). Consequently, this court will

---

[1] Section 5329 requires that a determination be made that the party poses no threat of harm to the child where that individual has a conviction for any of the enumerated offenses, which include aggravated assault, as was required by the prior Section 5303 discussed in D.R.C. However, because the child has been visiting Father without objection from Mother, it can be concluded that the visits did not raise any concern for a threat of harm to the child.

undertake no additional discussion of the 5328 factors in this opinion and will, instead, address the specific issues raised in Father's Statement of Errors.

With regard to any evidence of predisposition on the part of this court, the fact that this court repeatedly explained to Father that his incarceration limited his ability to parent the child, which affected whether he had the right to make demands concerning legal custody or parenting, does not constitute predisposition on the part of the court. Nor was it a predisposition on the part of the court to disallow complaints about how and/or whether or not Mother followed the existing custody order since Paternal Grandmother, who was the partial custodial party under the order, testified that she saw the child whenever she wanted to. Moreover, Father's complaints about Mother were not directed to any safety concerns – i.e., he was not concerned whether Mother would harm the child or allow anyone else to do so, and the court declined to provide Father a forum to simply criticize Mother's parenting. N.T. at 18, 31.

## Opportunity to present testimony

Father alleges he was denied a meaningful opportunity to present testimony in support of his position. As noted above, while the court disallowed testimony of Father that only constituted criticism of Mother, Father was not denied the opportunity to state his requests concerning custody of the child and reasons for same.

At the onset of the hearing, after setting forth some factual and procedural background, this court inquired if anyone had ever brought the child to see Father. He replied that he had seen the child all throughout his incarceration, off and on, and as recently as two weeks ago. Id. at 12. Grandmother interjected that she has always taken the child to Father. Id. When Father proceeded to testify that Mother was not following

7

the schedule for partial custody for Grandmother, the court interrupted to question Grandmother, who alone could provide non-hearsay testimony on that issue, and she testified that she can see her granddaughter whenever she wants to. Id. at 19.

Father then requested that the custody order be modified to provide for the following:

(a)     To allow his child to attend a private Muslim school (N.T., 31-32);

(b)     To have the child raised in Muslim beliefs (N.T., 34-35);

(c)     A visitation schedule for alternating weeks with his wife providing transportation (N.T. at 36, 45-46);

(d)     To have the child's hair and nails done (N.T., 41);

(e)     To have his wife involved in the child's life (N.T., at 41);

(f)     To have the child kept off social media (N.T., at 42).

Other than the matter of a visitation schedule, the above requests of Father seek to impose restrictions on Mother's legal custody and ability to parent the child, and were, therefore, rejected.

Father was arrested in July 2007, when the child was only nine months old, and has remained incarcerated ever since. The child will reach adulthood before Father is eligible for parole. Hence, Father's incarceration at a state institution renders Father unable to parent the child and leaves Mother with sole responsibility - physically, monetarily, emotionally and otherwise - notwithstanding whether or not Father wants to see the child and/or spend time with the child. Thus, on December 3, 2009, Mother was awarded sole legal custody, which gives her the right to "make major decisions on behalf of the child, including but not limited to, medical, religious and educational decisions." 23 Pa. § 5322,

8

Definitions.[2] That same order was entered in October 2010 and Father did not appeal either order.

While this custody matter is not a dependency proceeding and does not concern termination of parental rights, it must be noted that the Pennsylvania Supreme Court has found that lengthy incarceration in itself can be grounds for terminating parental rights because it renders the person unable to provide essential parental care, control or subsistence:

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing 'essential parental care, control or subsistence; and the length of the remaining confinement can be considered as highly relevant to whether 'the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent,' sufficient to provide grounds for termination pursuant to 23 Pa.C.S. 2511(a) (2). ... '[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.'

In re Adoption of S.P., 32 A.3d 817, 830 (Pa. 2012) (citations omitted, emphasis added) (affirming the trial court's decision terminating parental rights of father who was incarcerated before the child's birth and was serving a sentence of 5 to 10 years because he was not capable of providing for the basic needs of the child, notwithstanding his repeated requests for visitation and attempts to keep in contact with the child).

Hence, it is wholly appropriate that Mother retain sole legal custody, coincident to her singular responsibility for parenting the child in light of Father's incarceration, and the

---

[2] In 2009, the definition of legal custody was contained in Section 5302, since replaced by Section 5322 with the same wording.

9

finding by the Pennsylvania Supreme Court that incarceration essentially renders a person parentally unfit.

In her capacity as sole legal custodian, Mother has the right to decide where the child will attend school. To Mother's credit, she was not closed to suggestions about schooling options, but she was unable to afford and/or accommodate school arrangements other than where the child was presently enrolled:

> **Mother:** A,     [sic] has been on honor roll ever since she's been in school. She made honors every report, no matter if she's in private school or public school.
>
> I can't afford for her to go to private school. Like I said before, if we come to an agreement and find a school that's good for her, then I don't mind doing that. And the reason why she was tooken [sic] out of that school, like he said, it was inconvenient for me to take her there. But I don't mind to put her in private school or to better her education.

N.T. at 44. It must also be noted that Father did not know the name of the school he wanted the child to attend, nor could he provide any information as to why the child's current school was not satisfactory.

With regard to religion, Father's request to have the child raised in the Muslim faith would impose an unconstitutional restriction upon Mother's right to inculcate religious beliefs in the child absent a substantial threat of present or future physical or emotional harm to the child. Zummo v. Zummo, 574 A.2d 1130, 1157 (Pa.Super. 1990). In Pennsylvania there are "long-standing legal principles that the court will not interfere with the religious preferences of either parent." Tripathi v. Tripathi, 787 A.2d 436, 442 (Pa. Super. 2001). Hence, Mother and Father are both free to "pursue whatever course of religious indoctrination which that parent sees fit, at that time, during periods of lawful custody or visitation." Zummo, at 1140.

10

In addition, Mother testified that the child did not want to go to Islamic school and, just as she was never forced to be part of any particular religion, she did not want to force her daughter to do so. N.T. at 27-28.

Mother's legal custody also includes the authority to oversee adult interactions with the child and Father has no right to insist that his wife have contact with the child. The wife has no standing to seek any form of custody and was never part of the child's life as might have been the case had Father been married before he was arrested and had the child spent considerable periods of time with the wife and developed a relationship with her. Significantly, Mother made no request concerning this matter and no restrictions were incorporated into the order. Hence, until such time that Mother objects, nothing would preclude contact between Father's wife and the child during Paternal Grandmother's periods of custody.

While the child's grooming does not encompass a major category related to legal custody, it certainly constitutes parental care and control which only Mother has the authority to provide as primary physical and legal custodian. Hence, Mother has the right to groom the child in the manner she deems appropriate and Father's request to have the child's hair and nails done is an attempt on Father's part to superimpose his preferences for child care on Mother when he has no ability to assume responsibility for same.

Similarly, Father's request that the child be kept off social media is an attempt to impose his parenting preferences upon Mother, much to her dismay as it implied that she was not a responsible person. He complained about putting the child's picture on social media where there is "homosexual activity, drinking, drugs so forth, make (unintelligible)

11

about sexual comments and in the next picture down is my daughter's picture." Id. at 41-42. Mother responded as follows:

> **Mother:** I don't even know how to respond to that. I feel as though I have the right if I want to show my daughter on any social media. She's not in any pictures where there's drugs around her or alcohol around her. There's no pictures like that anywhere. I don't do drugs around her and I don't drink around her, so I don't know what he's talking about with that.

Id. at 43.

With regard to Father's request to set a schedule that he have visitation with the child at the state prison on alternating weeks, his initial concern was that Grandmother was becoming "older", which concern was summarily dismissed by the court since Grandmother is only 50 years old. Id. at 13.[3]

Both Father and Grandmother made a point of stating that Father had always been seeing the child, although neither party provided information about frequency. Hence, the March 12, 2015 order provides that Grandmother may continue to take the child for visits with Father and, since Grandmother was doing same voluntarily, the court declined to require that a particular schedule be followed.[4] Should a time occur that Grandmother is unable or unwilling to continue to bring the child for visitation, then Father can petition for modification and can consider whether another person can provide that assistance to Father, including his wife. However, absent any indication that Grandmother was not willing or able to transport the child for visitation with Father, it was not appropriate that the court

---

[3] An Errata Sheet has been appended to the Notes of Testimony concerning this testimony. The printed transcript shows that Father said his Mother was 59, whereas the actual testimony was that he said his Mother is 50, which is her correct age as reflected in court records.

[4] Mother expressed that she did not have the means to travel to take the child for visits, nor the time because she takes care of a family and works. Moreover, she noted that Father is presently able to see the child. Id. at 45.

12

enter an order at this time contingent upon an occurrence in the future where custody of a child is concerned.

Consideration of recommendations in Petition for Shared Legal Custody

Paragraphs 2, 3 and 4 of Father's Statement of Errors allege errors for failing to consider and/or order matters set forth in a "Petition for Shared Legal Custody." No such document is shown as having been filed in the docket entries of this custody case, nor was any such document referenced during the court hearing or introduced into evidence.[5]

Upon receipt of Father's Statement of Errors, this court examined the court file, lest some filing not have been appropriately docketed, and discovered a document entitled "Plaintiff's Proposed Stipulations of Custody." The document bears no stamped markings, and was not attached to anything else. This trial court will not address the contents of the document since it is not part of the record below, and it is unknown if Mother knew of its existence. However, it will be included in the record transmitted on appeal as Exhibit "A" and copies of same will be sent to all parties with a copy of the instant Opinion should the appellate court conclude that the document should be subject to appellate review.

Denial of shared legal custody and inclusion in medical decisions

Father alleges in paragraphs 5 and 6 of his Statement of Errors that it was error to deny the request that he be included in all major medical decisions involving the child and to deny award of shared legal custody. He also alleged that it was error to fail to order a visitation schedule, which issue was discussed above.

---

[5] Father's Complaint for Custody filed July 22, 2014 is set forth in the pre-printed form provided by the First Judicial District, which mirrors the format of Pa.R.Civ.P. 1915.15, and has been included in the record transmitted on appeal.

13

In <u>In re D.C.D.</u>, 105 A.3d 662, 676 (Pa. 2014), the Pennsylvania Supreme Court cited the doctrine that, "the right to make decisions concerning the care, custody and control of one's children is one of the oldest fundamental rights protected by the Due Process Clause," quoting from <u>Hiller v. Fausey</u>, 904 A.2d 875, 885. Yet, in that case, the Court held that terminating father's parental rights where he was incarcerated before the child was born and would not be released before the child turned seven did not infringe upon that right where the safety and permanency needs of the dependent child were concerned. The Court opined that the length of father's incarceration was relevant to his incapacity to parent the child, notwithstanding his attempts to seek video and in-person visits, sending gifts and cards and corresponding with caseworkers regularly.

Again, while the instant case is not a dependency matter and does not involve termination of parental rights, the Supreme Court has established a direct correlation between the ability to parent a child and the fact of incarceration, regardless of whether or not the incarcerated parent makes an effort to be involved in the child's life, which is relevant when considering a request for visitation with an incarcerated parent.

As stated above, Father's incarceration has rendered him largely incapable of parenting the child. He cannot provide food, shelter, child care, recreation, oversight or fulfill any other of the many responsibilities involved in parenting a child. While he can communicate with the child during periods of visitation and can write to the child and/or telephone the child, those activities alone do not constitute parental care or control.

14

Moreover, even in these limited parental acts, father is dependent upon the good will and/or assistance of others and cannot perform them independently.[6]

Nor is this a situation where Father had been parenting the child for a period of time before his incarceration and participating in decision-making as well as in the performance of parental duties.

An award of shared legal custody to Father would require that Mother make contact with Father, provide background information on the issue at hand (school selection, choice of pediatrician, selection of day care provider, assessing risks among potential medical treatment recommendations, etc.), then either concede to Father's decision or follow her own judgment in the event of a disagreement and risk facing a petition for contempt. Since Father is incarcerated, contacting him and communicating with him would require considerable effort and energy on her part since telephoning, texting and/or communicating by email with Father are not available options. Moreover, Father is not capable of assisting Mother in executing legal decisions such as, for example, transporting the child to and from his preferred school when her preferred neighborhood school is close to home or taking the child for medical appointments or treatment.

In addition, there are no consequences for Father if his legal preferences are unreasonable such that nothing would prevent his making arbitrary decisions. The fact that he sought to impose upon Mother the responsibility for raising the child in the Muslim religion, enrolling the child in a Muslim school which was selected by Paternal Grandfather and about which Father had no information and grooming the child according to Father's

---

[6] Someone must transport the child to and from Father's visitation periods, must be present to accept a telephone call to the child and must receive the mail sent by Father as well as provide any paper or postage the child might need to respond.

15

specifications was evidence that he sought to impose his will upon Mother without any consideration for whether she agreed and/or could accommodate his requests, more so than that he had an interest in sharing decision-making. Hence, it cannot be concluded as a matter of law that the denial of shared legal custody was an error.

Absence of opinion in support of decision concerning legal custody

In paragraph 7 of Father's Statement of Errors, he alleges it was error to fail to provide an opinion stating the reasons for denying his request for shared legal custody.

Section 5323(d) of the custody code requires that the court "delineate the reasons for its decision on the record in open court or in a written opinion or order." Thus there is no requirement for a written opinion, as opposed to a delineation of reasons on the record, which was done by this court. Pages 47-53 of the transcript contain the court's discussion of the custody factors under section 5328 of the custody code prior to the entry of the custody order and pages 20, 24, and 25-26 contain additional reasons for the court's denial of the request for shared legal custody.

"The Custody Act requires only that the trial court articulate the reasons for its custody decision in open court or in a written opinion or order taking into consideration the enumerated factors. 23 Pa.C.S.A. §§ 5323(d), 4328(a). ... [T]here is no required amount of detail for the court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." M.J.M. v. M.L.G., 63 A.3d 331, 336 (Pa.Super. 2013).

Conclusion

Father's lengthy period of incarceration and his limited contact with the child prior to incarceration render him unable to provide parental care such that he would be entitled

16

to share in the ability to make major decisions concerning same. Moreover, Mother's willingness to allow Paternal Grandmother to take the child to see Father and the absence of any unreasonableness on her part with regard to the visitation eliminate the need for a specific visitation schedule for Father. Hence, there was no error in the order of March 12, 2015.

BY THE COURT:

DATE: ___June 11, 2015___

DORIS A. PECHKUROW, J.

I hereby certify that the foregoing is a true copy of the original as same appears in the records of this Court this

date JUN 12 2015

by:

Clerk of Court

FRED KELLER

CLERK OF FAMILY COURT

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

JUN 11 2015

FIRST JUDICIAL DISTRICT OF PA
USER I.D.:

17